___ _'_ __!  !! _?_) _ ___ ____ _____  :
<_____
_____"___M_K_L_Y_Z_F_A_____T_L_P_L
_U_?_W_Y_X_____

## OPINIONS OF THE SUPREME COURT OF OHIO

The full text of the opinions of the Supreme Court of Ohio are being electronically transmitted beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. (614) 466-4961; in Ohio 1-800-826-9010.

Corrections may be made to the full texts of the opinions after they have been released to the public electronically. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final version of these opinions.

Motorists Mutual Insurance Company, Appellant and Cross-Appellee,
v. Said, Appellee and Cross-Appellant.
     [Cite as Motorists Mut. Ins. Co. v. Said (1992),
      Ohio St. 3d     .]
Insurance -- Torts -- Contracts -- Cause of action for tort of
      bad faith based upon alleged failure of insurance company to satisfy a
      claim by its insured may be brought as a separate action apart from
      insured's action alleging breach of insurance contract, when --
      Insurer's duty of good faith towards insured breached, how -- Cause of
      action for tort of bad faith arises, when -- "No lawful basis" for the
      intentional refusal to satisfy a claim, construed.
1. A cause of action for the tort of bad faith based upon an
      alleged failure of an insurance company to satisfy a claim
      by its insured may, under certain circumstances, be brought
      by its insured as a separate action, apart from an insured's
      action alleging breach of the insurance contract.  (Hoskins
      v. Aetna Life Ins. Co. [1983], 6 Ohio St. 3d 272, 6 OBR 337,
      452 N.E. 2d 1315, followed.)
2. An insurer has a duty of good faith towards its insured implied
      by law.  This duty may be breached by an intentional failure
      by the insurer to perform under its contract with the
      insured.

3. A cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal. Intent that caused the failure may be inferred and imputed to the insurer when there is a reckless indifference to facts or proof reasonably available to it in considering the claim.

4. "No lawful basis" for the intentional refusal to satisfy a claim means that the insurer lacks a reasonable basis in law or fact for refusing to satisfy the claim. Where a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim.

(No. 90-2285 -- Submitted December 3, 1991 -- Decided May 27, 1992.)

Appeal and Cross Appeal from the Court of Appeals for Cuyahoga County, No. 57418.

This appeal arises from an automobile accident involving an underinsured motorist on January 26, 1982 in which defendant-appellee and cross-appellant, Badr Said, the insured, sustained bodily injuries. On that date, Said and plaintiff-appellant and

cross-appellee, Motorists Mutual Insurance Company ("Motorists"), were parties to a valid automobile insurance policy which provided uninsured and underinsured motorist coverage in the maximum amount of $100,000 per person. After settling with the tortfeasor's insurance company for the policy limits of $25,000, Said filed an underinsured motorist claim with his own insurance company.

To support Said's claim, his attorney sent medical information he had regarding the claim to Cynthia Goodman, Motorists' claims adjuster. A copy of the emergency room report showed that after the accident Said, while evidently not showing any visible signs of injury, did complain of pain in his lower back, neck and stomach. Additionally, Said submitted to Motorists a report from one of his treating physicians which concluded that the insured's right inguinal hernia was also caused by the automobile accident. Medical bills, which totaled over $15,000 by June 1983, encompassed three hernia operations, physiotherapy, and medication. As of that date, Said was claiming lost wages of at least $35,000 due to the fact that he never returned to his job as a brakeman at Conrail after the accident.

After conducting its own investigation concerning the extent of Said's damages, Motorists determined that the claim had a value of approximately $25,000 to $30,000. Motorists believed that Said had sustained merely a back sprain in the accident and

that the hernias were unrelated.  Given the offset for the $25,000 already paid by the tortfeasor's insurer, Motorists offered $5,000 to settle Said's claim.  This offer was rejected.

As a result of the parties' inability to reach a settlement, the insured made a demand for an arbitration hearing on the value of the underinsured motorist claim.  After a hearing on October 19, 1984, the arbitration panel, unaware of the policy limitation, awarded the insured $118,152.72.  Thereafter, on December 5, 1984, Motorists filed its complaint in the trial court seeking a jury determination on the total amount of compensatory damages sustained by Said in the accident.  On December 27, 1984, Said filed his answer as well as a counterclaim against Motorists, alleging that Motorists had acted in bad faith in delaying the payment of the arbitrators' award.[1]  In his counterclaim, Said demanded punitive damages, as well as compensatory damages, as a result of the insurer's alleged bad faith.

In January 1989, a bifurcated trial commenced before the jury as to the value of Said's underinsured motorist claim under the insurance contract, and the bad faith counterclaim.  On January 11, 1989, the jury rendered a verdict for Said in the amount of $480,000 on Motorists' claim for determination of damages.  This award was reduced to a $100,000 judgment, reflecting the insurance policy limits and was immediately paid by Motorists.  Said's counterclaim on the issue of bad faith

proceeded before the same jury which, on January 24, 1989, found in favor of Motorists.

On appeal, the court of appeals reversed the trial court's judgment with respect to the insured's bad faith cause of action. In doing so, it held that the jury instruction regarding the standard of bad faith employed by the trial court was an incorrect statement of Ohio law. The trial court's judgment on Motorists' claim for determination of damages was affirmed.

The cause is now before us pursuant to the allowance of a motion and cross-motion to certify the record.

Gallagher, Sharp, Fulton & Norman, Thomas E. Dover and Timothy J. Fitzgerald, for appellant and cross-appellee.

Robert P. Rutter, for appellee and cross-appellant.

Murray & Murray Co., L.P.A., Dennis E. Murray, Sr. and Kirk J. Delli Bovi, urging affirmance for amicus curiae, Board of Erie County Commissioners.

Freund, Freeze & Arnold, Jane M. Lynch and Francis S. McDaniel, urging reversal for amicus curiae, Ohio Association of Civil Trial Attorneys.

Clark, Perdue & Roberts Co., L.P.A., and Edward L. Clark, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

Holmes, J.          The current action presents for our review the following issue: what is the appropriate standard for demonstrating that an insurance carrier acted in bad faith in withholding payments due the insured under a policy of insurance. Specifically, we must examine the jury instructions to see whether the trial court erroneously defined "bad faith."2  Because of the apparent frequency with which this type of claim is being asserted, and the confusion over what may constitute a basis for such a claim, we conclude that it is necessary to clarify the standard upon which bad faith is predicated under Ohio law.

At the outset, we recognize the well-established principle in Ohio that imposes on the insurer a duty to act in good faith in the handling and payment of the claims of its insured.  Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St. 3d 272, 6 OBR 337, 452 N.E. 2d 1315, paragraph one of the syllabus.  Moreover, as we emphasized in Hoskins, "[a] breach of this duty will give rise to a cause of action in tort against the insurer."  Id.  The tort of bad faith is not a tortious breach of contract, for no matter how willful or malicious the breach, it is no tort to breach a contract.  See Ketcham v. Miller (1922), 104 Ohio St. 372, 136 N.E. 145.3  Rather, the tort of bad faith arises as a consequence of a breach of a duty established by a particular contractual relationship.  In the area of contracts of insurance, the legal duty of good faith imposed by law on the insurer

applies with equal force to the company's settlement of third-party claims against its insured as it does to those claims brought by the insured himself. Hoskins, supra, at 275-276, 6 OBR at 340, 452 N.E. 2d at 1319. As stated by the Supreme Court of California in the landmark case, Gruenberg v. Aetna Ins. Co. (1973), 9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P. 2d 1032:

"It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." Id. at 575, 108 Cal. Rptr. at 486, 510 P. 2d at 1038.

Therefore, as illustrated by the above language, a cause of action for the tort of bad faith, based upon an alleged failure of an insurance company to satisfy a claim by its insured may, under certain circumstances, be brought by its insured as a separate action, apart from an insured's action alleging breach of the insurance contract. The insurer's duty of good faith towards its insured is implied by law. This duty may be breached only by an intentional failure by the insurer to perform under its contract with the insured.

Motorists asserts in its only proposition of law that

"[i]n order to demonstrate bad faith on the part of an insurer, an insured must show that the insurer acted with a dishonest purpose, moral obliquity, conscious wrongdoing, or a breach of a known duty through some ulterior motive."  This statement contains language from the syllabus law in this court's prior decision in Slater v. Motorists Mut. Ins. Co. (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45.  Because we find that the effect of Slater is to treat recovery of compensatory damages and punitive damages as inextricably mixed, we will endeavor to separate, distinguish, and clarify the standards for the two forms of recovery when the insured alleges an improper denial of insurance coverage.

A
Recovery of Punitive Damages -- Actual Malice Construed

        Before addressing the standard of proof necessary to support an award of compensatory damages for the insurer's bad faith withholding of insurance proceeds due under its agreement with an insured, we believe that it is necessary to distinguish that standard from the conduct which justifies imposition of punitive damages.  In Hoskins v. Aetna Life Ins. Co., supra, this court addressed the issue of what proof is necessary to uphold a claim for punitive damages when the insurer tortiously refuses payment of a claim made by its insured.  We held the following in paragraph two of the syllabus:

        "Punitive damages may be recovered against an insurer who

breaches his duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer. (Columbus Finance v. Howard [1975], 42 Ohio St. 2d 178 [71 O.O. 2d 174, 327 N.E.2d 654], applied.)"

The above standard was later embraced by this court in Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St. 3d 298, 525 N.E. 2d 783, which additionally recognized that:

"The requisite conduct necessary to support an award of punitive damages is separate and distinct from that sufficient to establish bad faith on the part of the insurer for wrongfully refusing to pay a claim." Id. at 304, 525 N.E. 2d at 789.

Otherwise stated, evidence which is sufficient to establish an award of compensatory damages does not automatically result in an assessment of punitive damages against the insurer; the insured is required to plead and prove by a preponderance of the evidence actual malice, fraud, or insult on the part of the insurer.4 Therefore, whatever the standard we choose upon which to predicate compensatory damages for the insurer's bad faith withholding of insurance proceeds, we must specifically distinguish such standard from that conduct which will give rise to an award of punitive damages.

In Preston v. Murty (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, we examined the definition of "actual malice" in order to determine whether punitive damages were properly awarded. The analysis began with our recognition that past constructions of

actual malice were plagued with ambiguity.  Case law was discovered
which imprecisely defined "actual malice" to include "extremely
reckless behavior revealing a conscious disregard for a great and
obvious harm."  Id. at 335, 512 N.E. 2d at 1175.  After recognizing
that longstanding public policy in Ohio awards punitive damages as a
means of punishing the tortfeasor and making him a public example so
that others may be deterred from similar conduct, we proceeded to
still the waters of confusion by rejecting any definition of
"actual malice" which included recklessness as an element.  Id.;
see, also, Detling v. Chockley (1982), 70 Ohio St. 2d 134, 24 O.O.
3d 239, 436 N.E. 2d 208.  Accordingly, we remarked in Preston as
follows:

"Since punitive damages are assessed for punishment and not
compensation, a positive element of conscious wrongdoing is always
required.  This element has been termed conscious, deliberate or
intentional.***"  Id.

It was upon this principle that we formulated the following
syllabus:

"Actual malice, necessary for an award of punitive damages,
is (1) that state of mind under which a person's conduct is
characterized by hatred, ill will or a spirit of revenge, or (2) a
conscious disregard for the rights and safety of other persons that
has a great probability of causing substantial harm."  (Emphasis
sic.)

While correctly stating the punitive damages standard with

reference to syllabus law in Hoskins, Staff Builders mistakenly described actual malice as including reckless behavior. In effect, Staff Builders, supra, 37 Ohio St. 3d at 304, 525 N.E. 2d at 789, inadvertently thrust the recklessness standard into the realm of punitive damages, thereby ignoring the established syllabus law in Preston which, in pertinent part, held that actual malice imports "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston, supra, at syllabus (second tier of the definition of actual malice).5  This court, in subsequent cases, has followed Preston by quoting its syllabus verbatim and refraining from allowing punitive damages to be assessed on mere reckless behavior. See Digital & Analog Design Corp. v. North Supply Co. (1989), 44 Ohio St. 3d 36, 44, 540 N.E. 2d 1358, 1365; Calmes v. Goodyear Tire & Rubber Co. (1991), 61 Ohio St. 3d 470, 473, 575 N.E. 2d 416, 419; Schellhouse v. Norfolk & Western Ry. Co. (1991), 61 Ohio St. 3d 520, 525, 575 N.E. 2d 453, 457, fn. 2

Preston observed that actual malice requires consciousness of the near certainty (or otherwise stated "great probability") that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving

maliciously.  See, generally, Prosser & Keeton, The Law of Torts (5 Ed. 1984) 212-214, Section 34.  In regard to actual malice, Preston made the following observation:

"The concept requires a finding that the probability of harm occurring is great and that the harm will be substantial.  A possibility or even a probability is not enough as that requirement would place the act in the realm of negligence.  A requirement of substantial harm would also better reflect the element of outrage required to find actual malice."  Preston, at 336, 512 N.E. 2d at 1176.

Accordingly, we believe that when an insured premises a demand for punitive damages upon the insurer's actual malice, the insured may successfully maintain his cause of action after proving his entitlement to compensatory damages for the tort of bad faith when the insured shows that the insurer's bad faith was also accompanied by a dishonest purpose, actual intent to mislead or deceive the insured, or a calculated scheme to defeat the insured's claim.

B

Recovery of Compensatory Damages -- The Tort of Bad Faith

Having found that, when seeking recovery of compensatory damages for the insurer's denial of policy coverage, the insured need not plead and prove that the insurer exhibited actual malice, we now turn our focus to that conduct under which the insurer may be subjected to liability for its bad faith denial of

coverage.

It is undisputed that, in the refusal-to-pay-claim type of action, "whenever an insurance company denies a claim of its insured, it will not automatically expose itself to an action in tort.  Mere refusal to pay insurance is not, in itself, conclusive of bad faith."  Hoskins, supra, 6 Ohio St. 3d at 276-277, 6 OBR at 341, 452 N.E. 2d at 1320.  See, also, Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St. 3d 71, 529 N.E. 2d 464, paragraph two of the syllabus.

Even though arguments are advanced to the contrary, there is no precedential authority from any decision of this court that supports the view that bad faith imports negligent behavior by the insurer in handling the claims of its insured.  Accordingly, in Hart v. Republic Mut. Ins. Co. (1949), 152 Ohio St. 185, 187-188, 39 O.O. 465. 466, 87 N.E. 2d 347, 349, quoted with approval in Staff Builders, this court noted that mere negligence in settling or refusing to settle a claim of its insured will be insufficient to impose liability on the insurer.6  Specifically, the Hart court stated:

"'*** that [t]he insurer cannot be held liable in tort for mere negligence on its part in failing or refusing to settle or compromise a claim brought against the insured for an amount within the policy limit, but that to be held liable in tort for its failure or refusal in this respect so as to entitle the insured to recover for the excess of the judgment over the policy

limit it must have been guilty of fraud or bad faith.'"  Id.

In order to demonstrate the tort of bad faith, some form of wrongful intent must be proven.  A finding of bad faith involves an inquiry into the insurer's state of mind.  It is not enough that the insurance company exercised poor judgment in withholding coverage; the insurer must, through its actions, or inactions, intentionally refuse to satisfy the insured's claim.  Additionally, when the nature of the insurer's conduct is malicious, such as when it is done for a dishonest purpose, or actual intent to mislead or deceive the insured, or calculated to defeat the insured's claim, then the insurer may be subjected to punitive damages.

As shown above, the duty of an insurance company to its insured is analogous to that of a fiduciary.  Accordingly, it is the duty of an insurance company to assess claims after an appropriate and careful investigation, and its conclusions should be the result of the weighing of probabilities in a fair and honest way.  For an insurance company's decision on a claim to be made in good faith, it must be based upon knowledge of the facts and circumstances upon which liability is predicated.  The absence of any diligence concerning a claim and the insurer's refusal to determine the nature and extent of the liability may, in certain instances, evidence bad faith.  See Anderson v. Continental Ins. Co. (1978), 85 Wis. 2d 675, 688, 271 N.W. 2d 368, 375.

Accordingly, we hold that a cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal. Intent that caused the failure may be inferred and imputed to the insurer when there is a reckless indifference to facts or proof reasonably available to it in considering the claim.

"No lawful basis" for the intentional refusal to satisfy a claim means that the insurer lacks a reasonable justification in law or fact for refusing to satisfy the claim. Where a claim is fairly debatable the insurer is entitled to refuse the claim as long as such refusal is premised on a genuine dispute over either the status of the law at the time of the denial or the facts giving rise to the claim.

Because we believe that the trial judge in the case sub judice blurred the distinction between the tort of bad faith, under which the insured may recover compensatory damages for harm proximately caused, and the tort of malice, we conclude that the jury instructions were an erroneous statement of law. Therefore, we affirm the judgment of the court of appeals and remand the cause to the trial court for proceedings not inconsistent with this opinion.

Moreover, Said's cross-appeal is dismissed, sua sponte, as having been improvidently allowed.

Judgment affirmed.

Moyer, C.J., Wright and H. Brown, JJ., concur.
Sweeney, Douglas and Resnick, JJ., dissent.

FOOTNOTES:

1  In his answer, Said disputed the appeal provision contained in the insurance policy.  After a series of procedural motions filed by both parties, the lawsuit eventually went before the Eighth District Court of Appeals on the issue of whether Motorists had a right to appeal the arbitration award.  The appellate court rendered a judgment holding that the insurance policy did give Motorists the contractual right to appeal the arbitration award and seek a jury trial on Said's underinsured motorist claim.  (See Motorists Mut. Ins. Co. v. Said [Sept. 3, 1987], Cuyahoga App. No. 52700, unreported.)  On appeal to this court, we denied Said's motion to certify the record (case No. 87-1881).

2  The jury instructions, which are at issue in the case sub judice, state in relevant portion:

"Now, ladies and gentlemen, Badr Said alleges that Motorists Mutual Insurance Company acted in bad faith in the handling and payment of his claim.  Based on the unique relationship between an insurance company and its insured, an insurance company has the duty to act in good faith in the handling and payment of the claims of its insured.

"A breach of this duty will give rise to a cause of action in tort against the insurance company, regardless of any liability arising from a breach of contract.

"The burden is upon Badr Said to prove by a preponderance

of the evidence that, one, Motorists Mutual acted in bad faith in the handling of the claim, and, two, Badr Said's damages, if any, were proximately caused by the alleged bad faith, and, three, the amount of damages, if any.

"I will now define for you bad faith.  A lack of good faith is the equivalent of bad faith.  Bad faith embraces more than bad judgment or negligence.  Bad faith imports a dishonest purpose, moral obliquity, conscious wrongdoing or a breach of a known duty through some ulterior motive.

"A mere refusal to pay an insurance claim is not, in itself, conclusive of bad faith, but when an insurance company insists that it was justified in refusing to pay a claim of its insured, such a deed may not be an arbitrary or capricious one.  You may take into consideration whether the conduct of the insurer was based on circumstances that furnished reasonable justification, therefore, in determining if Motorists acted in good faith.

"***

"Punitive damages.  Now, ladies and gentlemen, if you find that Motorists did act in bad faith and you award a sum of money to Mr. Said for compensatory damages, then and only then may you go on to consider separately the issue of punitive damages.  If you do not award a sum of money to Mr. Said for compensatory damages, you may not even consider the subject of punitive damages.

"The purpose of punitive damages is not to compensate the injured party.  That is for the purpose of compensatory damages.  Punitive damages, on the other hand, are allowed as a punishment to the offender and as an example to deter others from offending in a like manner.

"The allowance of punitive damages rests upon the ground of public policy, a policy which seeks to promote the public safety, to punish through the medium of a civil proceeding, a malicious wrongdoer, and to hold him up as a warning to others, to deter them from offending in a like manner.

"You are not required to award punitive damages to Mr. Said, and you may not do so unless you find by a preponderance of the evidence that Motorists Mutual acted with actual malice.

"I will now define for you actual malice.  Actual malice means that state of mind under which a person is characterized by hatred, ill will or a spirit of revenge, or a conscious disregard for the rights or safety of other persons, that has a great probability of causing substantial harm.

"Probability means likelihood, and great probability means a considerable or sizeable likelihood.  Substantial means major, of real importance, of great significance, and not trifling or small.

"Actual malice may be inferred from conduct and surrounding circumstances.  Intentional, reckless, wanton, willful and gross acts which cause injury to person or property

may be sufficient to evidence that degree of malice required to support an award of punitive damages." (Emphasis added.)

3 The Supreme Court of Wisconsin, in Anderson v. Continental Ins. Co. (1978), 85 Wis. 2d 675, 686, 271 N.W. 2d 368, 374, succinctly stated the inherent problem with referring to the tort of bad faith as a "tortious breach of contract":

"While that term ['tortious breach of contract'] may be a convenient shorthand method of denominating the intentional conduct of a contracting party when it acts in bad faith to avoid its contract obligations, it is confusing and inappropriate, because it could lead one to believe that the wrong done is the breach of the contract. It obscures the fact that bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract per se and it fails to emphasize the fact that separate damages may be recovered for the tort and for the contract breach."

4 Prosser & Keeton, The Law of Torts (5 Ed. 1984) 9-10, Section 2, reads:

"Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. There is general agreement that, because it lacks this

element, mere negligence is not enough, even though it is so extreme in degree as to be characterized as 'gross,' a term of ill-defined content, which occasionally, in a few jurisdictions, has been stretched to include the element of conscious indifference to consequences, and so to justify punitive damages. Still less, of course, can such damages be charged against one who acts under an innocent mistake in engaging in conduct that nevertheless constitutes a tort."

5  Staff Builders states the following: "Alternatively, actual malice has been described as 'extremely reckless behavior revealing a conscious disregard for a great and obvious harm.' Preston v. Murty (1987), 32 Ohio St. 3d 334, 335, 512 N.E. 2d 1174, 1175." Id., 37 Ohio St.3d at 304, 525 N.E. 2d at 789-790. This language, however, was not intended by Preston to be the law which disposed of the issue before the court. Rather, it was intended merely to serve as an example of the vagueness of prior constructions of actual malice and the resulting confusion in the law.

6  We have continuously reaffirmed the principle that bad faith embraces more than bad judgment or negligence. See Slater, supra, at paragraph two of the syllabus; Wasserman v. Buckeye Union Cas. Co. (1972), 32 Ohio St. 2d 69, 73, 61 O.O. 2d 326, 328, 290 N.E. 2d 837, 840; Spitler v. State Auto. Mut., Inc. (1980), 61 Ohio St. 2d 242, 244, 15 O.O. 3d 255, 256, 400 N.E. 2d 889, 891; Centennial Ins. Co. v. Liberty Mut. Ins. Co. (1980), 62

Ohio St. 2d 221, 224, 16 O.O. 3d 251, 253, 404 N.E. 2d 759, 762; Hoskins, supra, 6 Ohio St.3d at 276, 6 OBR at 341, 452 N.E. 2d at 1320.

Douglas, J., dissenting.    While the judgment of the majority appears to affirm the judgment of the court of appeals, this really is more fiction than fact.  Therefore, I must vigorously dissent.

Part II of the opinion of the court of appeals is a well-reasoned discussion of the primary issue in this case. Today's majority opinion is so far afield from what the court of appeals held, and what this case is all about, that it is my guess that the court of appeals' judges, Judges Pryatel, McManamon and Parrino, and also the parties herein, will not recognize that we are discussing their case.

This case is not about punitive damages.  This case is not about intentional torts.  This case is not about "no lawful basis" or "the intentional refusal to satisfy a claim."  This case is about the question of what is a proper jury instruction in an action by an insured alleging bad faith on the part of an insurer in failing to settle a claim within the terms of a policy of insurance.  This case is also about a cross-appeal presenting the issues of what evidence is admissible by an insured to support an allegation of bad faith against an insurer; whether litigation expenses of an insured, to effect recovery of a claim under the insured's own policy, are recoverable as damages in the bad faith claim; and whether

the duty of good faith owed by an insurer to its insured continues until the claim is resolved or terminates when litigation between the insurer and the insured commences.

I

The Appeal

Appellant-insurer's sole proposition of law on appeal to this court is: "In order to demonstrate bad faith on the part of an insurer, an insured must show that the insurer acted with a dishonest purpose, moral obliquity, conscious wrongdoing, or a breach of a known duty through some ulterior motive. (Slater v. Motorists Mutual Ins. Co. [1962], 174 Ohio St. 148 [21 O.O.2d 420, 187 N.E.2d 45] approved and followed)." This appeal arises because the court of appeals reversed a jury verdict rendered in favor of appellant on the bad faith claim of appellee. The basis of the reversal was that the trial court improperly, in part, instructed the jury on the standard to be used in determining alleged insurer bad faith.

The trial judge instructed the jury that "I will now define for you bad faith. A lack of good faith is the equivalent of bad faith. Bad faith embraces more than bad judgment or negligence. Bad faith imparts a dishonest purpose, moral obliquity, conscious wrongdoing or a breach of a known duty through some ulterior motive." (Emphasis added.) This definition is found in Slater v. Motorists

Mut. Ins. Co. (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45, a four-to-three decision of this court, with a visiting judge from the second appellate district in the majority.

Subsequently, we decided Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St. 3d 298, 525 N.E. 2d 783. In Staff Builders, we said: "Accordingly, it is our further determination that an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." (Emphasis added.) Id. at 303, 525 N.E. 2d at 788. In addition, we said that "* * * [a]s mentioned previously, an award of compensatory damages against an insurance company for bad faith is predicated upon its refusal to pay the claim where such refusal is not founded upon circumstances that furnish reasonable justification therefor. (Emphasis added.) Id. at 304, 525 N.E. 2d at 790.

In further discussing the trial court's charge in Staff Builders, Justice Sweeney ably pointed out the different standards applicable to bad faith and malice: "* * * In explaining the standard of conduct evidencing bad faith on the part of appellant, the trial court in its jury instruction remarked: '[Bad faith] imports a

dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.  It also embraces actual intent to mislead or deceive another.'"  (Emphasis sic.) Id. at 305, 525 N.E. 2d at 790.  Justice Sweeney went on to say that "[t]his standard, however, is more akin to that necessary to prove malice than bad faith.  * * *"  Id.

As the court of appeals recognized in its well-reasoned opinion, the standards set forth in Slater and Staff Builders, to support a claim of insurer bad faith, are incompatible.  Further, over forty years ago this court set the standard in Hart v. Republic Mut. Ins. Co. (1949), 152 Ohio St. 185, 188, 39 O.O. 465, 466, 87 N.E. 2d 347, 349, when we said, "* * * [t]he conduct of the insurer must be based on circumstances that furnish reasonable justification therefor.  * * *"  Finally, the subject of "what is bad faith" and the various standards used by the several states for determining alleged bad faith claims were discussed in Murray & Delli Bovi, Prosecuting Bad Faith Claims, Prosecuting and Defending Insurance Claims (Cushman, Roznowski & Simpson Ed. 1989) 439, at Section 17.8. Attorneys Dennis Murray, Sr. and Kirk Delli Bovi point out, at 445-446, that the range of the spectrum of standards is the simple negligence

standard on the one end and the moral obliquity standard on the other end.  Obviously, the middle, fairer and more acceptable standard is the one we adopted in Staff Builders -- the "reasonable justification" standard.

Accordingly, the syllabus law in this case should be:

"An insurance company fails to exercise good faith in the processing of a claim of its insured when its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification for such refusal.  (Hart v. Republic Mut. Ins. Co. [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E. 2d 347, and Staff Builders, Inc. v. Armstrong [1988], 37 Ohio St. 3d 298, 525 N.E. 2d 783, approved and followed; Slater v. Motorists Mut. Ins. Co. [1962], 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45, paragraph two of the syllabus, overruled.)"  Conversely, the majority says that in order to demonstrate the tort of bad faith, an insurer must "* * * intentionally refuse to satisfy the insured's claim.  * * *" (Emphasis added.)  This has never been the law in Ohio and we should not now let such a standard creep into our jurisprudence.

II

The Cross-Appeal

The majority summarily dispatches appellee's cross-appeal by dismissing it as improvidently allowed.  Given the extensive discussion in the majority opinion of

non-issues, this indeed seems curious.  I would not treat the cross-appeal in the manner dictated by the majority.

A

Litigation Expenses

This case involves a policyholder sued by his insurance carrier.  The case commenced when the carrier offered appellee $5,000 to settle his underinsured claim.  After this offer was refused, the appellee demanded arbitration. When the arbitrators unanimously awarded appellee-insured over $118,000, the carrier wanted a jury trial.7 Subsequently, the jury rendered its verdict for appellee in the amount of $480,000 and the carrier finally paid appellee the $100,000 policy limit.8  This was in January of 1989 -- for an accident that occurred in January of 1982.

Meanwhile, appellee has been through negotiations, arbitration, two trials, two trips to the court of appeals and two trips to this court.  Now, if what the majority opinion holds is what  I think it does -- appellee will go through yet another trial on the bad faith claim and will not be entitled to claim any litigation expenses even if a jury finds the carrier engaged in bad faith.  It might be logically asked, what other compensatory damages might there be in a bad faith claim?  From the evidence submitted, there are obviously some -- home foreclosure,

no money for son's college tuition, no medical or fire insurance and so forth.

At the trial on the bad faith claim, appellee sought litigation expenses connected only with the litigation of the injury claim. He did not seek expenses involved in the bad faith claim. The expenses sought consisted generally of deposition costs and expert witness fees. The litigation expenses were sought as part of the compensatory damages in the bad faith case. Apparently no attorney fees were sought.

While it is true, as set forth in Ohio Edison Co. v. Franklin Paper Co. (1985), 18 Ohio St. 3d 15, 16, 18 OBR 13, 479 N.E. 2d 843, 844, that "[g]enerally, an unsuccessful litigant is not liable for the litigation expenses, including attorney fees, of its adversary in the absence of a statute providing for their allowance * * *," that rule does not, necessarily, also pertain to cases where an insurer is found to have acted in bad faith. The law in Ohio on this question is sparse. For this reason, if no other, this court should address and decide the question.

Nonetheless, we do have the reported case of Spadafore v. Blue Shield (1985), 21 Ohio App. 3d 201, 21 OBR 215, 486 N.E. 2d 1201, in which then-judge and now Chief Justice Moyer participated and concurred. In sustaining

the appellant's fourth and fifth assignments of error relating to compensatory damages, the court said that "[t]he course of conduct sufficiently established the breach of the insurer's duty of good faith so as to submit that issue to the jury. Damages flowing from the conduct and other damages caused by the breach of contract also should have been submitted. * * * An obvious loss to Spadafore [appellant] was the cost of the lawsuit to enable recovery of his claim. * * *" (Emphasis added.) Id. at 204, 21 OBR at 217-218, 486 N.E. 2d at 1204.

This is the same claim being made herein in appellee's cross-appeal. The issue is important. It has been properly raised. The trial court and the court of appeals have ruled that such litigation expenses may not be considered by the jury. We should decide the question.

B

What Evidence is Admissible?

This case, in appellee's cross-appeal, raises two issues under this heading. First, may documents showing how the carrier handled the claim be admitted in evidence even if those documents contain information of the carrier, its attorneys and its claims personnel regarding evaluation of the claim and possible offers of settlement? Secondly, does the common-law duty of good faith terminate when an insured files a lawsuit against

the insurer sounding in bad faith?

Appellee submitted five exhibits9 which involved the conduct of the carrier in evaluating appellee's claim. The trial court excluded these documents from evidence on the basis of Evid. R. 403 and 408. The trial court also ruled that any evidence coming into existence after the bad faith lawsuit was filed could not be admitted on the issue of bad faith.

In Spadafore, supra, the court also said that "* * * evidence of the breach of the insurer's duty to exercise good faith occurring after the time of filing suit is relevant so long as the evidence related to the bad faith or handling or refusal to pay the claim. * * *" (Emphasis added.) Id. at 204, 21 OBR at 217, 486 N.E. 2d at 1204. Appellee claims, and at least some of the documents so indicate, that the evidence was related to the handling of the original injury claim and has nothing to do with the specific bad faith litigation but, in any event, the insurer's duty of good faith continues even after a bad faith lawsuit is filed. Appellee also contends, and I think properly so, that Evid. R. 408 does not preclude the introduction of settlement negotiations if offered not to prove liability for the original loss but to prove failure to process the claim fairly and in good faith.

Once again, these are important issues.  The trial court and the court of appeals have decided the questions.  They are matters of first impression for us.  They are properly before us.  We should decide them for the guidance of the bench and bar.

Accordingly, because the majority does not decide the primary issue presented to us by the parties and, in addition, ignores the important issues raised in the cross-appeal, I must dissent even though I agree that appellee is entitled to a new trial on his bad faith claim.

Sweeney and Resnick, JJ., concur in the foregoing dissenting opinion.

FOOTNOTES:

7    As part of his response to the carrier's complaint seeking a jury trial, appellee filed a motion to dismiss on the basis that the award of the arbitrators was final.  The trial judge, Judge Feighan, in October 1986, ruled that the carrier did not have the right to appeal the arbitrators' award.  The carrier appealed and the court of appeals, on the basis of language in the policy, reversed the judgment of the trial court and ruled that the carrier was entitled to a trial by jury on appellee's underinsured motorists claim.  It now appears that the trial judge was correct.  See Schaefer v. Allstate Ins. Co. (1992), Ohio St. 3d    ,     N.E. 2d    .

8    Apparently the carrier paid the full $100,000 policy limit, notwithstanding the $25,000 paid by the tortfeasor's insurance company, on the authority of James v. Michigan Mut. Ins. Co. (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d. 272, and Gomolka v. State Auto. Mut. Ins. Co. (1984), 15 Ohio St. 3d 27, 15 OBR 67, 472 N.E. 2d 700.  See appellee's exhibits 82A and B and 83.

9    Given the content of these documents, it is no wonder the carrier is fighting so vigorously to keep them from a jury.