OPINION *Page 2 
{¶ 1} In February of 2003, appellant, Donald Goins, purchased a homeowners policy of insurance from appellee, American Family Insurance Company, from appellees, insurance agent Erin K. Stewart and Erin K. Stewart Agency. Appellant subsequently renewed the policy in June 2003 and April 2004.
 {¶ 2} On May 12, 2004, appellant's home was destroyed by a fire. At first, appellee American Family denied coverage because appellant did not have any coverage. Apparently, appellees Stewart did not forward appellant's premium to American Family. After realizing that appellant had paid the premium for the insurance coverage, appellee American Family began adjusting the loss.
 {¶ 3} On May 14, 2004, Jeffrey Morehouse, a representative for American Family, took an oral statement from appellant regarding the loss. On May 20, 2004, William Thompson, an investigator for American Family, took a second oral statement from appellant.
 {¶ 4} Pursuant to the policy, appellant was to submit to an examination under oath. During letter exchanges between the parties' respective counsel to set a date and time for the examination, appellant's counsel requested copies of the oral statements he had previously given. Appellee American Family refused to provide said copies.
 {¶ 5} On May 9, 2005, appellant filed a complaint against appellees, claiming breach of contract and bad faith. Appellees filed motions for summary judgment. Appellee American Family claimed appellant breached the contract first by refusing to sit for the examination under oath. By judgment entries filed January 23, 2008, the trial *Page 3 
court granted summary judgment to appellees and dismissed Counts 2 and 3 of appellant's complaint.
 {¶ 6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE A GENUINE DISPUTE EXISTED AS TO MATERIAL FACTS."
 II {¶ 8} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT AMERICAN FAMILY INSURANCE'S MOTION FOR SUMMARY JUDGMENT ON COUNT THREE BECAUSE BAD FAITH IS A TORT CLAIM THAT IS SEPARATE FROM A BREACH OF CONTRACT CLAIM."
 III {¶ 9} "AN INSURANCE AGENT CAN BE HELD LIABLE FOR BAD FAITH."
 {¶ 10} The first two assignments of error challenge the trial court's decision to grant summary judgment to appellees. Summary Judgment motions are to be resolved in light of the dictates of Civ. R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel.Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 11} "Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and *Page 4 
viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472,364 N.E.2d 267, 274."
 {¶ 12} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 I, II {¶ 13} Appellant claims the trial court erred in granting summary judgment to appellee American Family Insurance Company as to Counts II and III of the complaint. Specifically, appellant claims the trial court erred in determining appellant had breached Conditions — Section I, ¶ 19(d)(3) of the Homeowners Policy. We agree.
 {¶ 14} Said section states the following:
 {¶ 15} "19. What You Must Do in Case of Loss. In the event of a loss to property that this insurance may cover, you and any person claiming coverage under the policy must:
 {¶ 16} "d. as often as we reasonably require:
 {¶ 17} "(3) let us record your statements and submit to examinations under oath by any person named by us, while not in the presence of any other insured, and sign the transcript of the statements and examinations." *Page 5 
 {¶ 18} In its judgment entry filed January 23, 2008, the trial court concluded appellant had committed a breach of the insurance contract, thereby eliminating appellee American Family's obligation under the contract:
 {¶ 19} "The record before the court indicates that the Plaintiff did not submit to an examination under oath or sign the transcript of an examination under oath as requested by the company. This failure is a material breach of the contract by the Plaintiff. The record indicates that the Plaintiff gave recorded statements which he claims were under oath, but when were transcribed, do not indicate that he was sworn, and said statements do not appear to the court to be signed. The court notes that even if it were to consider these statements to be statements under oath, the Plaintiff still refused to submit to an additional statement under oath in the presence of the attorney for the Defendant as required by the contract of insurance between the parties. This refusal on the part of the Plaintiff is a material breach of contract by the Plaintiff and based thereon, the court grants the Motion of the Defendant, American Family Insurance Company, for summary judgment as to Counts Two and Three of the Plaintiff's Complaint."
 {¶ 20} Despite some initial disagreement as to whether the statements given to appellee American Family were under oath, there is but one issue of fact presented sub judice. The issue is whether the correspondence between appellant's counsel, John Lavelle, and appellee American Family's counsel, Mark Maddox, constitute a breach of the insurance policy and contract.
 {¶ 21} On March 7, 2005, Mr. Maddox proposed the following dates for the deposition: *Page 6 
 {¶ 22} "Thank you for your letter of March 2, 2005. I would propose that we take the examination under oath of Mr. Goins on March 25, 2005 or April 6, 8, 12 or April 15, 2005. Please let me know if any of these dates are compatible with your schedule."
 {¶ 23} Mr. Lavelle provided the following response on March 17, 2005:
 {¶ 24} "Thank you for your letter of March 7th, 2005. While meeting with my client to discuss the same, it has been brought to my attention that he has already provided a statement to Bill Thompson who reported that he was present to investigate the matter on behalf of the insurance company. It is my client's recollection that Mr. Thompson placed him under oath prior to giving the tape recorded statement. If this is indeed correct, I am requesting a copy of any transcript and of the audio recording itself of such a statement."
 {¶ 25} On March 23, 2005, Mr. Maddox responded as follows:
 {¶ 26} "Mr. Lavelle, I have been attempting to schedule your client's examination under oath since November 29, 2004. You have repeatedly raised obstacles to the examination under oath. In my letter of March 7, 2005 I set forth a number of dates on which I would be available to conduct the examination under oath of Mr. Goins. Unless I hear from you within the next seven days, or by March 30, 2005, I will advise American Family to deny this claim due to your client's lack of cooperation."
 {¶ 27} In response, Mr. Lavelle proposed the following:
 {¶ 28} "Nevertheless, we are most willing to sit down and address this matter by providing a statement under oath. My request was simple. I would like to obtain a copy of the prior statement given under oath to your investigator. Please provide a copy of *Page 7 
that statement at your earliest convenience. I have some dates and times available in April. I am sure our respective staffs can coordinate a mutually agreeable time."
 {¶ 29} On April 14, 2005, appellee American Family attempted the following compromise:
 {¶ 30} "I have forwarded your latest correspondence along to Martin Hulthen, in-house counsel for American Family Insurance. Mr. Hulthen informs me that American Family Insurance will release the transcript of the recorded statement given by Mr. Goins following the completion of the examination under oath.
 {¶ 31} "I would like to proceed with the examination under oath on May 6, 2005 beginning at 10:00 A.M. in your office in Athens. I will obtain the court reporter. I assume this date will be compatible with your calendar unless I hear from you immediately. If the date is not compatible, please provide alternate dates."
 {¶ 32} In a letter dated April 20, 2005, Mr. Lavelle objected to the proposal as follows:
 {¶ 33} "This is in response to your letter of April 14th, 2005. It is indeed unfortunate that Mr. Hultren has taken the position that he will not provide his customer with a copy of a previous statement given under oath to an investigator before demanding yet another statement under oath by a lawyer. I have a mediation in Columbus, Ohio, with an out-of-state mediator on May 6th, 2005, at 10:00 a.m., as well as a pre-trial in Federal Court in Columbus that date. Accordingly, that date is totally out of the picture as far as I am concerned for arranging any type of a statement under oath. *Page 8 
 {¶ 34} "I am available for such a statement any day the following week except Friday. A condition of my client appearing for yet another statement under oath is that I first be provided with the first statement under oath so I can review the same."
 {¶ 35} On the same date, Mr. Maddox agreed to reset the deposition to May 11, 2005 at 10:00 a.m., explaining the circumstances surrounding the previous statement:
 {¶ 36} "First, you must understand that the previous statement given by your client to American Family was not `given under oath.' It was simply a statement to the investigator which was recorded. American Family will release the recorded statement transcript to you immediately following the examination under oath of Mr. Goins. American Family will not release the transcript of the statement given to the investigator prior to the examination under oath, however."
 {¶ 37} On April 29, 2005, Mr. Maddox again re-affirmed the May 11, 2005 deposition date. Mr. Lavelle faxed the following statement on May 9, 2005:
 {¶ 38} "Mark — we are filing suit today. The examination under oathwill not go forward on May 11, `05. I'll be in touch."
 {¶ 39} In its motion for summary judgment, appellee American Family argued the examination under oath was a prerequisite to filing suit against American Family, citing Conditions — Section I, ¶ 19(d)(3) and Conditions — Section II, ¶ 7(a)(4) of the policy. We note the requirements of each of these aforementioned sections do not provide for copies to the insured of any statements made by the insured. This was the prerequisite requested by appellant's counsel and denied by appellee's counsel. Whether appellant was right or wrong in pursuing this request is not at issue. The issue is whether or not appellant refused to give a sworn deposition. The trial court found the delays in *Page 9 
responding and requesting the previous statement to be a denial of appellee's request for an examination under oath.
 {¶ 40} It is also important to note that appellant never had a copy of the insurance contract at the time of first procuring the policy (February, 2003), or at the time of the loss (May 12, 2004), or at the time he gave his first statement to the American Family investigator (May 16, 2004). Appellant received a copy of his policy on September 8, 2004. Also, the loss occurred on May 12, 2004, therefore the one year deadline for filing suit against the insurer was May 12, 2005, one day after the proposed Friday, May 11, 20005 deposition date. See, Conditions — Section I, ¶ 18. It is clear the issues sub judice could not be settled within the time frame of the one year limitation for filing suit. If appellant had cooperated in the May 11, 2005 deposition, the issues could not have been resolved in a timely manner. A lawsuit was inevitable at that point.
 {¶ 41} Count 2 of appellant's complaint is a breach of contract claim for failure to pay the value of the loss (¶ 26), failure to pay for additional living expenses and other damages (¶ 27), and failure to provide him a contract of insurance at its procurement (¶ 25).
 {¶ 42} Count 3 of appellant's complaint is a bad faith claim. Appellant claimed appellee American Family engaged in a pattern of activity to defeat his justifiable claim (¶ 38). Appellant also claimed American Family's refusal to produce a copy of appellant's statements prior to deposition was an unjustifiable demand (¶ 36).
 {¶ 43} A bad faith claim arises "* * * as a consequence of a breach of a duty established by a particular contractual relationship."Motorists Mutual Insurance Co. v. Said (1992), 63 Ohio St.3d 690,694-695, overruled on other grounds by Zoppo v. *Page 10 Homestead Insurance Co. (1994), 71 Ohio St.3d 552. "A breach of this duty will give rise to a cause of action in tort against the insurer."Hoskins v. Aetna Life Insurance Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus. "The tort of bad faith is not a tortious breach of contract, for no matter how willful or malicious the breach, it is no tort to breach a contract.* * * Rather, the tort of bad faith arises as a consequence of a breach of a duty established by a particular contractual relationship." Said at 694. (Citations omitted.) TheSaid court at 695 concluded the following:
 {¶ 44} "Therefore, * * * a cause of action for the tort of bad faith, based upon an alleged failure of an insurance company to satisfy a claim by its insured may, under certain circumstances, be brought by its insured as a separate action, apart from an insured's action alleging breach of the insurance contract. The insurer's duty of good faith towards its insured is implied by law. This duty may be breached only by an intentional failure by the insurer to perform under its contract with the insured."
 {¶ 45} The intent necessary to establish the tort of bad faith requires that the insurer, through its actions, or inactions, intentionally refuses to satisfy the insured's claim. Said, at 699. Thus, "[f]or an insurance company's decision on a claim to be made in good faith, it must be based upon knowledge of the facts and circumstances upon which liability is predicated." Id.
 {¶ 46} From our "birds eye view" of these two causes of action, we conclude the first genuine issue of fact to be resolved is who first breached the contract. The "precondition to suit" violation is a determination to be made long after a trier of fact determines what the contract bargained for was, and whether American Family's action *Page 11 
of providing "blank" policy conditions regarding a "pre-suit" deposition violated the terms of the insurance contract and/or whether its actions constituted bad faith.
 {¶ 47} Upon review, we find the trial court erred in granting summary judgment to appellee American Family as to Counts 2 and 3 of the complaint.
 {¶ 48} Assignments of Error I and II are granted.
 III {¶ 49} Appellant claims the trial court erred in granting summary judgment to appellee Erin K. Stewart. We disagree.
 {¶ 50} In dismissing Counts 2 and 3 against appellees Stewart, the trial court found the following:
 {¶ 51} "The court notes that the second Count of the Complaint of the Plaintiff against the Defendants, Erin K. Stewart and Erin K. Stewart Agency herein, alleges breach of contract. The file indicates that Erin K. Stewart and Erin K. Stewart Agency were insurance agents and were therefore not parties to the contract between the Plaintiff and the Defendant, American Family Insurance Company. According to the law of agency, since Erin K. Stewart and Erin K. Stewart Agency are agents of the Defendant, American Family Insurance Company, they can bind American Family Insurance Company, qui facit per alium facit per se. Although they can bind coverage for American Family Insurance Company, they are not parties to the contract and cannot be in breach, an act which can be done only by the principal — in this case, American Family Insurance Company.
 {¶ 52} "Count Three of Plaintiff's Complaint alleges that the Defendants, Erin K. Stewart and Erin K. Stewart Agency, breached the duty of good faith and fair dealing *Page 12 
and acted in bad faith in denying coverage. Again, the law of agency allows an insurance agent to bind a principal company in a contract of insurance. Insurance agents are not parties to the contract and only bind the principal, qui facit per alium facit per se. The record indicates the alleged breach of contract and breach of the insurer's duty of good faith and fair dealing was based on the actions of the principal, American Family Insurance Company, and not upon any actions of the Defendants, Erin K. Stewart or Erin K. Stewart Agency. While it is possible that an agent can be liable for the agent's own bad faith, the record indicates that in this case, the Defendants, Erin K. Stewart and Erin K. Stewart Agency, helped the Plaintiff in adjusting his claim as to the loss to his residential property." See, Judgment Entry filed January 23, 2008.
 {¶ 53} In Count 2 of the complaint, appellant admitted at ¶ 25 that despite the failure of appellees Stewart to remit his payment, American Family provided coverage:
 {¶ 54} "Realizing that its ostensible agent had failed to remit payment as Plaintiff and Defendant Erin K. Stewart had agree, Defendant American Family issued an adhesion contract of purported insurance after the loss and attempted to add terms and conditions into the contact that were not bargained for by Plaintiff and Defendant Erin K. Stewart in April of 2004."
 {¶ 55} Therefore, any issue regarding "breach of contract" as alleged in the complaint averred to the actions of American Family, not appellees Stewart. Any act of agency on behalf of American Family by appellees Stewart was negated by the providing of coverage as admitted to in the complaint. *Page 13 
 {¶ 56} Count 3 of the complaint involved the claim for bad faith in the negotiating and settling of appellant's fire loss. All evidence presented via affidavit(s) and deposition(s) referenced actions by American Family, not its agent.
 {¶ 57} Upon review, we conclude the trial court was correct in dismissing Counts 2 and 3 of the complaint as against appellees Stewart.
 {¶ 58} Assignment of Error III is denied.
 {¶ 59} The judgment of the Court of Common Pleas of Morgan County, Ohio is hereby affirmed in part, reversed in part, and remanded.
Farmer, J., Hoffman, P.J., and Delaney, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morgan County, Ohio is affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellee American Family. *Page 1