OPINION
{¶ 1} Plaintiff-appellant, Beth A. Dorsey, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, Cincinnati Insurance Company ("CIC"), on plaintiff's bad-faith claim against CIC. Plaintiff timely appeals, asserting the following error:
 {¶ 2} "The trial court erred as a matter of law in failing to find genuine issues of material fact as to whether appellee possessed reasonable justifications for asserting and continuing to assert the sudden emergency defense."
 {¶ 3} Because the trial court did not err in granting summary judgment to CIC on plaintiff's claim of bad faith, we affirm.
 {¶ 4} On July 12, 1999, a dump truck, owned by defendant Campbell Hauling and operated by its employee Willie Campbell ("Campbell") crossed over a grassy median on I-270 in Franklin County and struck several vehicles, including a vehicle plaintiff was driving. According to witnesses at the scene, the dump truck drove straight across three lanes of oncoming traffic and did not slow down or try to avoid the vehicles. Plaintiff sustained severe bodily injuries as a result of the accident; Campbell was pronounced dead at the scene in the cab of the dump truck.
 {¶ 5} The police accident report indicated Campbell was at fault for the accident. According to the report, Campbell's daughter informed the investigating officer her father had a history of heart problems. The coroner's report listed Campbell's cause of death as pseudoephedrine intoxication associated with cardiomegaly and morbid obesity. Explaining, the deputy coroner testified in deposition that Campbell weighed over 300 pounds and had an enlarged heart that was twice the size of a normal heart. The deputy coroner opined that as a result of Campbell's enlarged heart, together with his ingestion of a toxic amount of the stimulant pseudoephedrine, commonly known as Sudafed, Campbell suffered cardiac arrhythmia, an irregular heart beat, that resulted in his death. (Oct. 10, 2000 Norton depo.)
 {¶ 6} At the time of the accident, Campbell Hauling had an automobile insurance policy with CIC containing liability limits of $1 million. Plaintiff also had insurance policies with CIC, including (1) an automobile policy providing underinsured ("UIM") benefits of $250,000 per person and $500,000 per accident, and (2) an umbrella policy providing $1 million in UIM coverage benefits. Plaintiff's agent timely notified CIC of plaintiff's claims for coverage.
 {¶ 7} On November 12, 1999, plaintiff filed a complaint against Campbell Hauling and CIC. In it she alleged that (1) Campbell Hauling, acting through Campbell as its agent or employee, was negligent and proximately caused plaintiff's injuries, and (2) CIC breached its insurance contracts with plaintiff by failing to pay plaintiff UIM coverage benefits under her policies. Plaintiff requested punitive damages against Campbell Hauling based on Campbell's "voluntary" ingestion of pseudoephedrine. According to plaintiff, Campbell's drug ingestion "demonstrated a conscious disregard for the rights and safety of other driver, and created a great probability of causing substantial harm." (Nov. 12, 1999 Complaint, ¶ 11.)
 {¶ 8} CIC retained attorney Greg Rankin to represent it on plaintiff's UIM claims; it retained attorney Michael McLane to represent Campbell Hauling, as CIC's insured, on plaintiff's underlying liability claims. On December 16, 1999, McLane filed an answer on behalf of Campbell Hauling, contesting Campbell's liability and asserting a "sudden emergency" defense. Specifically, Campbell Hauling's answer alleged Campbell was not negligent because he had a sudden and unexpected health emergency that caused unconsciousness or death prior to the collision with plaintiff. Rankin did not assert that defense in the answer he filed for CIC on December 14, 1999.
 {¶ 9} On January 21, 2000, Rankin and McLane entered into an agreement to divide the work on the case. McLane assumed the lead on the liability aspects of the case. Included within his responsibilities was pursuing the sudden emergency defense, including an investigation of Campbell's medical condition. Rankin agreed to investigate plaintiff's injuries. CIC was advised of the arrangement.
 {¶ 10} On August 7, 2000, plaintiff moved for summary judgment on the issue of Campbell Hauling's liability. Campbell Hauling responded with a memorandum contra and also filed a cross-motion for summary judgment based on the sudden emergency defense. CIC subsequently joined in Campbell Hauling's summary judgment motion, noting the trial court's disposition of the liability issue would be dispositive as to all parties.
 {¶ 11} On December 4, 2000, plaintiff amended her complaint to include allegations that CIC demonstrated bad faith in failing to properly investigate and evaluate plaintiff's UIM claim. Specifically, plaintiff asserted CIC's "refusal to pay" plaintiff's claim for UIM benefits was not based on reasonable justification.
 {¶ 12} While the cross-motions for summary judgment were pending on the issue of liability, all the parties attended a mediation on February 6, 2001. Plaintiff settled her claims against Campbell Hauling at the mediation, accepting $850,000 as full and final settlement of her claims against Campbell Hauling. Negotiations immediately followed between plaintiff and CIC regarding plaintiff's UIM claims. Plaintiff demanded $300,000 in settlement of the claims; CIC offered $75,000. Plaintiff rejected the offer, but within two weeks settled her UIM claims with CIC for $175,000, reserving the right to proceed against CIC on her bad-faith claim.
 {¶ 13} On December 17, 2001, CIC filed a motion for summary judgment on plaintiff's bad-faith claim. Following full briefing, the trial court granted CIC's motion. The trial court found CIC did not act in bad faith where (1) the evidence showed reasonable justification for asserting the sudden emergency defense, and (2) CIC settled plaintiff's UIM claim within two weeks of Campbell Hauling's settlement with plaintiff.
 {¶ 14} In her assignment of error, plaintiff asserts the trial court erred in granting summary judgment to CIC because the evidence showed material issues of fact whether CIC acted in bad faith in asserting the sudden emergency defense to her UIM claim.
 {¶ 15} Appellate review of summary judgment is de novo, under which the appellate court stands in the shoes of the trial court and conducts an independent review of the record. Advanced Analytics Laboratories v Kegler, Brown, Hill Ritter, 148 Ohio App.3d 440,2002-Ohio-3328, at ¶ 33. Summary judgment is appropriately granted only where the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 16} Pursuant to statute and the UIM coverage provisions in CIC's insurance policies issued to plaintiff, plaintiff had a claim for UIM coverage only if she was "legally entitled to recover" damages for her bodily injury from the underinsured motorist. Former R.C. 3937.18(A)(1) and (2); Cole v. Holland (1996), 76 Ohio St.3d 220, syllabus; Kurent v. Farmers Ins. of Columbus (1991), 62 Ohio St.3d 242, 245-246. The UIM statute is "premised on the tortfeasor's legal liability to the injured insured" and is intended to provide UIM coverage for injured persons who have a legal cause of action against a tortfeasor, whose liability coverage is less than the injured person's damages. (Emphasis sic.) State Farm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, 400. Thus, Campbell Hauling's legal liability for plaintiff's injuries was a condition precedent to her entitlement to recover any UIM benefits from CIC. Kurent, supra. Accordingly, if Campbell Hauling was not legally liable to plaintiff for bodily injury damages resulting from the accident, CIC had no liability to pay UIM benefits to plaintiff. Id.
 {¶ 17} Pursuant to the "sudden emergency" defense, Campbell Hauling would not be liable to plaintiff for plaintiff's injuries if Willie Campbell was "suddenly stricken by a period of unconsciousness which he ha[d] no reason to anticipate and which render[ed] it impossible for him to control the car he [was] driving * * *." Lehman v. Haynam (1956), 164 Ohio St. 595, paragraph two of the syllabus. By contrast, if the emergency was self-created, so that the loss of control of the dump truck resulted from Campbell's own conduct or from circumstances under his control, he and Campbell Hauling would not be excused from liability. Spalding v. Waxler (1965), 2 Ohio St.2d 1, paragraph five of the syllabus. As the parties invoking the sudden emergency defense, defendants had the burden of proving the defense. Lehman, at paragraph three of the syllabus.
 {¶ 18} Plaintiff asserts that CIC initially may have been justified in asserting the sudden emergency defense following the accident, but CIC was not reasonably justified in continuing to assert the sudden emergency defense. According to plaintiff, CIC's continued assertion of the defense delayed the "ripeness" of plaintiff's UIM claim, even though discovery showed Campbell's "emergency" was self-created and the sudden emergency defense was no longer viable. Plaintiff contends CIC exhibited bad faith because it failed to investigate Campbell's medical history and ignored evidence that Campbell, who had a pre-existing heart condition, had ingested an excessive amount of pseudoephedrine that caused his unconsciousness or death.
 {¶ 19} An insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph two of the syllabus; Hahn's Elec. Co. v. Cochran, Franklin App. No. 01AP-1391, 2002-Ohio-5009, ¶ 41, appeal not allowed, 98 Ohio St.3d 1537, 2003-Ohio-1946. As part of its duty, the insurer must "assess claims after an appropriate and careful investigation" and reach conclusions as a result of "the weighing of probabilities in a fair and honest way." Motorists Mut. Ins. Co. v. Said (1992), 63 Ohio St.3d 690, overruled on other grounds, Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus, certiorari denied (1995), 516 U.S. 809, 116 S.Ct. 56. An insurer fails to act in good faith where it refuses to pay a claim and the refusal is "not predicated upon circumstances that furnish reasonable justification therefor." Zoppo, paragraph one of the syllabus. Reasonable justification is lacking where an insurer arbitrarily or capriciously refuses to pay a claim. Hart v. Republic Mut. Ins. Co. (1949),152 Ohio St. 185, 188; Nationwide Ins. Enterprise v. Progressive Specialty Ins. Co., Franklin App. No. 01AP-1223, 2002-Ohio-3070, at ¶ 19. An insurer, however, is entitled to refuse a claim where the claim is "fairly debatable" and the insurer's refusal is based on a genuine dispute over either the facts giving rise to the claim or the status of the law at the time the claim was denied. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 630, rehearing denied (1993), 66 Ohio St.3d 1417. Here, plaintiff's legal entitlement to UIM coverage was at least "fairly debatable." Even when it is viewed in a light most favorable to plaintiff, the evidence regarding the initial and continued viability of the sudden emergency defense was conflicting.
 {¶ 20} John Robertson, an insurance expert, opined that the issue of a "sudden emergency" was certainly valid. According to Robertson, CIC appropriately relied upon the defense based on the initial investigation at the accident scene. The investigation showed Campbell had not taken evasive action or braked before the accident, thus suggesting he was suddenly incapacitated or dead when the accident occurred.
 {¶ 21} According to the accident investigation report, Campbell's daughter told the investigating officer her father had a history of heart problems. However, Harry Campbell, Campbell's cousin and the owner of Campbell Hauling, testified in a deposition that Campbell was in good health prior to the accident. The autopsy showed Campbell died from heart arrhythmia, essentially a heart attack, caused by an enlarged heart and the ingestion of pseudoephedrine. The deputy coroner was unable to opine with any probability whether Campbell would have experienced symptoms of arrhythmia in the months before the accident, or whether he would have experienced any warning signs of impending unconsciousness or arrhythmia in the minutes before the accident.
 {¶ 22} Although the coroner's report indicated Campbell had ingested "toxic" levels of pseudoephedrine, Alfred Staubus, a pharmacology expert, disputed the significance of the pseudoephedrine levels found in Campbell's body. He opined that the apparently elevated post-mortem blood level could be explained by either analytical error or by post-mortem drug redistribution that can account for a several-fold increase in a person's drug levels after death.
 {¶ 23} Contrary to plaintiff's contention, the evidence does not show that Rankin ignored evidence regarding Campbell's health history. Rather, the evidence shows Rankin continually evaluated the case and weighed the probabilities that the sudden emergency defense would succeed. Motorists Mut., supra. Specifically, Rankin testified that in January 2000 his initial evaluation was that liability was probable, based on the autopsy and accident reports. Rankin stated his evaluation changed, however, as discovery progressed, because evidence was obtained that indicated Campbell was in good health prior to the accident. As a result, Rankin was led to believe the sudden emergency defense was a strong and viable defense, and Campbell Hauling and CIC had a good chance of prevailing in their summary judgment motions on the issue of liability.
 {¶ 24} Then, after Campbell's daughter was deposed and Campbell's medical records were obtained in January 2001, Rankin was less optimistic about the viability of the sudden emergency defense. The discovery indicated Campbell had pre-existing heart problems and had been placed on a heart transplant list. Id. Nevertheless, according to Rankin, the medical records contained no medical opinion that a heart attack was imminent or foreseeable. Rankin testified he was aware of cases in which persons with pre-existing heart conditions successfully had invoked the sudden emergency defense where their having a heart attack behind the wheel of a vehicle was not foreseeable. Accordingly, he scheduled depositions of Campbell's treating physicians to determine if the risk of his heart attack was foreseeable. Before the treating physicians were deposed, plaintiff settled with Campbell Hauling and then settled with CIC.
 {¶ 25} In the final analysis, the uncontroverted evidence shows CIC always intended to provide coverage for plaintiff's UIM claim if Campbell Hauling was found liable or settled with plaintiff. CIC thus withheld approving or denying plaintiff's UIM claim until a determination was made regarding Campbell Hauling's liability on the underlying claim. Plaintiff's own insurance expert, Jack Lane, testified a UIM insurer presents no problem simply because it waits until a tortfeasor concludes its defense before the insurer resolves an insured's UIM claim. According to Lane, even if the UIM insurer has conducted its own, full investigation and determined a sudden emergency defense is not viable, the insurer has no duty to pay a UIM claim its insured presents until the alleged tortfeasor has settled with or acknowledged liability to the insured. As Lane testified, it is "not a problem" if the UIM claim is resolved within three weeks of the liability claim being resolved. (Lane depo., 55-56.) Here, CIC made a settlement offer immediately after plaintiff and Campbell Hauling settled the underlying liability claim, and then, according to plaintiff's own expert, timely resolved plaintiff's UIM coverage claim within two weeks.
 {¶ 26} Plaintiff contends Rankin, as CIC's counsel on the UIM claims, had a duty to investigate the viability of the "sudden emergency" defense, including Campbell's health history, independently of McLane's investigation. Plaintiff, however, offers no authority to support her contention, and we have found none. To the contrary, authority in this state suggests an attorney may have someone else investigate a case. See State v. Giles (Nov. 28, 1997), Portage App. No. 97-P-0022, appeal not allowed (1998), 81 Ohio St.3d 1469 (determining a "duty to investigate a case traditionally falls upon a party's attorney who may then delegate that duty to an investigator of his choosing"). Moreover, Rankin reasonably relied on McLane's investigation into Campbell's legal liability where Campbell Hauling, represented by McLane, had primary liability in the case.
 {¶ 27} Accordingly, the trial court did not err in granting summary judgment to CIC on plaintiff's claim of bad faith where the evidence, even when viewed in a light most favorable to plaintiff, shows (1) plaintiff's claims for UIM coverage were at least "fairly debatable," and (2) CIC timely settled plaintiff's UIM claims when her legal entitlement to payment of the claims was established. As a result, we affirm the judgment of the trial court granting summary judgment to CIC on plaintiff's claim of bad faith.
Judgment affirmed.
LAZARUS and BROWN, JJ., concur.