**In re Carrie Sue FOSTER, Debtor.**

**Bankruptcy No. 94–52856.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 17, 2000.

See also 247 B.R. 731.

ence previously entered in this district. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

## I. BACKGROUND OF DISPUTE

The debtor in this bankruptcy case had a potential claim against Blue Cross/Blue Shield of Ohio, now known as Medical Mutual of Ohio ("Medical Mutual"). Larry E. Staats, the duly-appointed trustee in bankruptcy ("Trustee"), applied to this Court to have Maguire, Vivyan & Schneider appointed as special counsel to pursue that claim for the bankruptcy estate. Tom Vivyan of the Maguire firm was the attorney who had represented the debtor in an earlier administrative appeal of the insurance coverage denial. The Maguire firm was appointed as special counsel for the Trustee on February 26, 1996.

Vivyan filed a state court action against Medical Mutual in February of 1996. Sometime thereafter the Maguire firm ceased to exist. Somewhat later Vivyan persuaded Ed Clark, with the law firm of Clark, Perdue, Robert & Scott ("CPRS"), to participate in the lawsuit against Medical Mutual. The Trustee applied for the appointment of successor special counsel and on September 16, 1999 the Court ordered the appointment of both Vivyan and CPRS as successor special counsel. On November 19, 1999 the Court approved a compromise of the lawsuit for the sum of $950,000.

At the time CPRS became co-counsel with Vivyan in the state court action, the debtor signed a fee agreement acknowledging that Vivyan and CPRS would be sharing in any fee award. That contingent fee agreement was for 33 1/3% of the first $250,000 and 50% of any recovery in excess of $250,000. Any costs advanced by the attorneys were to be reimbursed by the client.

A dispute has now arisen between CPRS and Vivyan about how the large amount of this contingent fee award is to be shared between them. Originally they had orally agreed to share any fees equally. CPRS

Thomas F. Vivyan, Edward L. Clark, Clark, Perdue, Roberts & Scott, Columbus, OH, Special Counsel.

Michael P. Vasko, Canal Winchester, OH, for Martha Dean.

Grady L. Pettigrew, Cox, Stein & Pettigrew Co., L.P.A., Columbus, OH, for debtor.

Larry E. Staats, Columbus, OH, Chapter 7 Trustee.

## OPINION AND ORDER ON APPLICATION OF SPECIAL COUNSEL THOMAS VIVYAN AND CLARK, PERDUE, ROBERTS & SCOTT, L.P.A. FOR THE ALLOWANCE OF FEES AND THE REIMBURSEMENT OF EXPENSES

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the application of two special co-counsel to the Trustee for allowance of fees for legal services and the reimbursements of expenses advanced. The Court has jurisdiction in these matters under 28 U.S.C. § 1334 and the General Order of Refer-

also asserts that there was an agreement to advance costs equally, but Vivyan denies that. After Vivyan requested a written statement of their agreement, a letter was delivered to him on August 13, 1999 stating that both fees and expenses were to be shared equally. Vivyan denies that those were the terms of his agreement as to expense advancements, and he concedes that he did not advance half of the expenses incurred. CPRS now challenges the equal division of fees and alleges that Vivyan did not assist in the case or advance costs as he was required. Because both Vivyan and CPRS argue, for different reasons, that the letter of August 13, 1999 does not represent their agreement, the Court has been requested to determine how the fees should be divided. There also is a contest about whether a reduction in fees of $50,000, which CPRS agreed to without Vivyan's knowledge in order to effectuate the settlement, should be subtracted only from the CPRS share or should be borne equally by each law firm.

## II. *ALLOWANCE OF FEES FOR SERVICES*

Any division of legal fees between attorneys who are not members of the same firm is governed by Disciplinary Rule 2–107A. That rule states:

(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:

(1) The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility for the representation;

(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;

(3) The total fee is reasonable.

■ The Court finds that the debtor, and later the Trustee, were aware of and had consented to the sharing of fees in this matter between Vivyan and CPRS. Both Vivyan and CPRS assumed responsibility for the representation and their identity and the fact of their agreement to share fees was made known to the client in writing. Although the exact terms of the sharing were not specified in the initial written agreement with the debtor, the oral agreement to divide the fees evenly was premised upon an understanding that an equal division would be approximately proportionate to the services performed by each. Under the facts of this matter, the Court finds that the agreement to share fees, as executed on April 1, 1998, is enforceable under *Waterman v. Kitrick*, 60 Ohio App.3d 7, 572 N.E.2d 250 (1990), *appeal dismissed sub nom., Waterman v. Christy*, 57 Ohio St.3d 618, 566 N.E.2d 1244 (1991) (table).

■ The Court further finds that whatever understanding Vivyan and CPRS had for the division between them of fees, work and expense advancements, that agreement was repudiated by each of them. Therefore, the appropriate division must be made by the Court based upon the Disciplinary Rule's requirement of proportionality for services performed. Expense reimbursement will be made only as to actual expenses advanced which are reasonable and documented. There will be no presumption of equal division.

Vivyan pursued the second level of administrative appeal relating to Medical Mutual's denial of medical benefits to the debtor. After payment was again denied in February, 1994, Vivyan let the claim rest without much further action on his part until after the Supreme Court of Ohio in 1994 decided *Zoppo v. Homestead Insur. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397. That decision caused Vivyan to give renewed attention to the debtor's rights. In February of 1996, he filed a lawsuit against Medical Mutual on the debtor's behalf. After some unnecessary delay because of Vivyan's failure to respond timely to a motion by the defendant and his failure to have the Trustee substituted as plaintiff, Vivyan appeared to have the case on track for a trial on the merits before

the state court. In trying to prepare for such a trial Vivyan began to realize that he needed help if the case were to come to a successful conclusion. He needed assistance in cost advancements; he needed a good trial attorney who could help prepare the case for trial against a formidable adversary; and he needed co-counsel with a good professional reputation before the assigned trial judge. Vivyan then sought the help of CPRS.

After CPRS decided to participate as co-counsel in the case, there was some initial cooperation between Vivyan and CPRS. They jointly took some depositions, initiated discovery and discussed tactics and strategy. For whatever reason, strains appeared in that relationship at some point. Vivyan became less responsive to requests for assistance and unresponsive to requests for the advancement of expenses. CPRS then took the leading role in pursuing the case, preparing for trial and communicating with the debtor and the Trustee. The debtor supported this change in roles and felt that CPRS was more effective in the pursuit of her case than was Vivyan. CPRS did most of the final preparation for trial and successfully negotiated the eventual settlement of the case for a very significant sum. The Court now must evaluate the proportionate benefit or value contributed by each of the co-counsel.

■ Under Ohio law the relative value of services performed is not based solely upon the quantity of such services, but upon their quality or value. *Waterman* at 11, 572 N.E.2d 250. Such assessment depends on an analysis of all factors used to determine fees for legal services, including the attorney's experience and expertise and the benefit of the services to the client. *Id.* The federal courts in fee matters give more weight to the "lodestar" analysis (hours spent multiplied by a reasonable hourly rate) in awarding attorney fees in bankruptcy cases. In that context the quantitative and value analyses become part of the determination of the reasonable hourly rate. *In re Boddy*, 950 F.2d 334

(6th Cir.1991). Pursuant to 11 U.S.C. § 330(a)(3), "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and

(E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

■ In a contingency fee matter where a shared compensation agreement forces the court to consider the relative contributions of each law firm, the "lodestar" analysis would be used only to arrive at a comparative value for services.

■ In his 1993 contract for services with the debtor, Vivyan had agreed to charge one-third of any recovery or $100 an hour, whichever was greater. That contract and Vivyan's later testimony establish that $100 is his normal hourly rate. Clark testified that his hourly rate, in the infrequent situations where he bills that way, is approximately $300 per hour.

Vivyan estimated the time he actually spent on this case was 506 hours. That estimate comes from approximately 246 hours estimated for Vivyan by CPRS and 260 additional hours set out by Vivyan. Vivyan also estimated that his paralegal spent 100 hours and an attorney employed in his office spent 150 hours. CPRS estimated its time on the case at 775 hours for Clark and 152 hours for attorney Douglas

Roberts. There also is an estimate of 80 hours by a paralegal employee.

The dispute in this case is compounded by Vivyan's inconsistent and sometimes incredible testimony. It is also compounded by his inadequate record-keeping and inattention to detail. There are glaring errors, duplications and misadditions in his time estimates and in his expense claims. Such mistakes cause the Court to further doubt the accuracy of his interpretation of various events.

It is clear that Vivyan originated the lawsuit which yielded such a beneficial settlement for the debtor and for her bankruptcy estate. He also prepared the case up to the time CPRS became involved. Obtaining CPRS' involvement was itself an act of great benefit. There were other activities such as the failure to respond to a dispositive motion and dilatoriness in substituting the bankruptcy trustee as the plaintiff which required hours of legal work by Vivyan, but which merely delayed any benefit to the debtor or the bankruptcy estate. That work was not necessary, was caused by Vivyan, and should not be recognized or credited in any fee division.

It appears that Vivyan was having severe personal and financial problems during the period that this case was being prosecuted. Those problems may have caused him to be unresponsive, uncooperative and, perhaps somewhat ineffective. Those problems don't erase his very real contribution to the success of the case, but they impact the proportionality of his efforts.

Vivyan's properly countable hours spent on this case were about two-thirds of those spent by CPRS. His hourly rate, and therefore some measure of his expertise and experience, is much less than that of the primary attorney at CPRS who worked on this case. Any settlement of the case without the involvement of CPRS, assuming such a resolution could have occurred, would have been much less than what was finally achieved.

The Court finds that the division of fees in this case which is proportionate to the necessary and beneficial services provided by each attorney or firm, derived from the analyses required under the Bankruptcy Code and Ohio law, is 25% for Vivyan and 75% for CPRS. The percentage should be calculated on the total fee award of $383,-333.33. The $50,000 CPRS agreed to reduce the fees to obtain the settlement is thus imputed to any attorneys working on the case. Any fees to be paid to Vivyan also must be reduced by $1,100 previously paid to Vivyan by the debtor.

## III. *REIMBURSEMENT OF EXPENSES*

Both Vivyan and CPRS have applied to this Court for the reimbursement of expenses incurred in connection with their co-special counsel duties. The Trustee has filed comments relating to several of the expenses requested.

### A. *Expense Request of Thomas Vivyan*

Vivyan filed a response to the fee application of CPRS. In his response Vivyan also asks for the reimbursement of his expenses in this matter. He supplemented that request with some additional items in an exhibit introduced at the hearing.

The reimbursement of expenses to an appointed professional in a chapter 7 case is authorized in 11 U.S.C. § 330(a)(1)(B). The authorization extends only to actual, necessary expenses. The burden of showing that the expenses were actually made and were necessary is on the applicant.

The Court understands that an attorney who is generally employed on a contingency fee basis may not record the degree of detail about time spent on a matter that an attorney would keep for billing on an hourly basis. There should be no difference between the two types of practices, however, when it comes to record keeping for expenses advanced. Professional conduct requires that any charge to a client for an expense must be documented and invoices and receipts or other

evidence of payment must be kept and must be made available.

▇▇▇ Frankly, the Court was dismayed at the careless nature of Vivyan's documentation of expenses. The initial request was for $10,131.68. The supplement at trial added another $316.40. The original request for $10,131.68 was not a proper reflection of the total of the amounts shown. The items listed, when added together, totaled only $6,731.68. The documentation attached to the request supported only $3,892.60 of that amount. There are duplications, missing receipts and arithmetic errors of significant magnitude in the request. Of the $3,892.60 properly requested and supported, $2,000 has previously been reimbursed to Vivyan by CPRS. Therefore, the proper amount of unreimbursed expenses to be allowed from the request filed February 8, 2000 is $1,892.60.

The supplemental request made at the hearing includes $241.40 for mileage and parking. Those charges appear reasonable and appropriate. The charge of $75 for records is not supported by any evidence of payment, however, and the $80 charge for copying appears to be an estimate for which this Court would need more precision. Accordingly, $241.40 of the supplemental request will be allowed.

The total allowance for unreimbursed expenses for Vivyan, therefore, is $2,134.

### B. *Expense Request of CPRS*

▇▇▇ CPRS has requested reimbursement of $99,874.73 in expenses. That amount includes the $2,000 CPRS paid to Vivyan in May of 1998. These expenses are documented and set forth appropriately. The issue that has arisen is whether four payments, totaling $4,693.90, are properly classified as expenses or should be included in the attorney fee component. The questioned items are payments between May and September of 1999 of $1,408.65, $1,286 and $616 to Laura K. Call or Call Legal Services and a payment of $1,383.25 to the Barbe Costanza & Cuppy law firm in September 1999. These pay-

ments were to law firms in other states who assisted with depositions, witness identification and other matters.

The parties did not cite any case law on this issue to the Court and the Court is not aware of any precedent in this matter. Given the large amount of the settlement in this law suit which is being devoted to legal fees, however, the Court finds that in this case the expenses for discrete legal services performed for CPRS, without separate appointment of the attorneys involved, should be considered as part of the attorney fee award. These persons were essentially agents of co-counsel. They were not separately hired by the Trustee. Had there been no recovery in this action, their bills probably would not be collectible against the bankruptcy estate.

Accordingly, the Court disallows as reimbursable expenses the four questioned items in a total amount of $4,693.90 Such items should be paid as part of the attorney fees awarded in this case.

### IV. *CONCLUSION*

Based on the foregoing, attorney fees are hereby awarded in the amount of $383,333.33. Of that amount $4,693.90 must be paid to the Call & Barbe law firms. After that payment CPRS shall be entitled to a payment of $283,979.57 and Thomas Vivyan shall be entitled to a payment of $93,559.86. Expenses to be reimbursed are hereby authorized in the amount of $2,134.00 to Vivyan and $95,-180.83 to CPRS.

**IT IS SO ORDERED.**