DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Brent Zaychek and Wilma Libby Zaychek, appeal a decision granting summary judgment in favor of appellee, Nationwide Mutual Insurance Co. in the Summit County Court of Common Pleas. We reverse and remand.
 {¶ 2} On October 17, 2002, appellants were involved in an automobile collision with Shawn Hargett, whereby Mr. Hargett rear-ended Brent Zaychek's car while it was stopped at a red light. Appellants and Mr. Hargett were all insured by appellee, Nationwide Mutual Insurance Co. ("Nationwide"). Appellants were injured in the collision and submitted their medical bills to Nationwide on January 29, 2003, which *Page 2 
medical bills were not paid at that time. On September 13, 2004, appellants filed suit against Mr. Hargett. Appellants did not name Nationwide as an additional defendant in this lawsuit or assert claims for med pay or underinsured/uninsured motorists coverage. ("UM/UIM") In response to appellants' lawsuit, Nationwide offered the policy limits under Mr. Hargett's policy ($12,500 to each appellant) and appellants accepted that offer, reserving the right to file a UM/UIM claim under Mr. Zaychek's Nationwide policy.
 {¶ 3} On April 22, 2004, appellants filed a claim for UM/UIM coverage with Nationwide. Medical records were again provided to Nationwide and in July 2005, the Nationwide adjustor responsible for the appellants' claims (Craig Deibel) had the information he needed to make a recommendation and submit it to a Nationwide committee for authority to settle. Mr. Deibel never so recommended and Nationwide did not make a settlement offer at that time.
 {¶ 4} On September 1, 2005, counsel for appellants made an official settlement demand of $70,000 for each appellant. Nationwide did not make an offer and on October 18, 2005, appellants filed suit against Nationwide asserting clams for breach of contract and breach of fiduciary duty (bad faith).
 {¶ 5} On November 21, 2005, Nationwide answered appellants' complaint and propounded discovery upon appellants seeking, among other things, appellants' medical records. Appellants provided a third set of medical records to Nationwide. On March 8, 2006, Nationwide made a settlement offer of $22,500 for each appellant, and appellants *Page 3 
accepted that offer. Nationwide paid appellants' med-pay claim on August 8, 2006. Appellants then dismissed their UM/UIM claims leaving only the bad faith claim pending before the trial court.
 {¶ 6} On August 11, 2006, Nationwide filed a motion for summary judgment on appellants' bad faith claims. In support of its motion, Nationwide filed the deposition of Mr. Deibel. On August 29, 2006, Appellants filed their brief in opposition supported by the affidavit of Mr. Zaychek and Nationwide's answers to appellants' request for admissions and documents attached thereto. The trial court granted Nationwide's motion for summary judgment and dismissed appellants' claim on October 6, 2006. In its entry the trial court found that a claim for bad faith cannot stand unless the insurance company denies coverage and that a four and one-half month delay in processing appellants' UM/UIM claim was not unreasonable.
 {¶ 7} Appellants timely appealed the trial court's entry granting summary judgment to Nationwide and have raised two assignments of error.
 ASSIGNMENT OF ERROR NO. I "THE TRIAL COURT ERRED IN DETERMINING THAT FOUR AND ONE-HALF MONTHS WAS THE RELEVANT PERIOD OF DELAY FOR PURPOSES OF THE APPELLANTS' BAD FAITH CLAIMS."
 ASSIGNMENT OF ERROR NO. II "THE TRIAL COURT ERRED IN DETERMINING THAT THE APPELLANTS HAD NOT STATED BAD FAITH CLAIMS AS A MATTER OF LAW AND IN GRANTING SUMMARY JUDGMENT TO THE APPELLEE." *Page 4 
 {¶ 8} Appellants assert that the trial court's determination that Nationwide failed to pay their claims after only a four and one-half month delay is error. Further, Appellants argue, Ohio law does not support the proposition that an insurer has to deny coverage for an insured to have a viable bad faith claim. Appellants assert that unexcused delay in handling, processing, and paying claims supports a bad faith claim and Mr. Deibel admitted he failed to fulfill his obligation to timely make a settlement offer. Finally, Appellants assert the following conduct constituted bad faith: (1) Nationwide did not make an offer to settle for nearly one year (from the date the UM/UIM claim was submitted to the date of payment); (2) Nationwide requested medical records that had already been submitted as part of the claim against the tortfeasors; (3) Nationwide's offer at mediation required Appellants to dismiss the bad faith claim; and (4) Nationwide did not pay appellants' med pay claims for three and one-half years.
 {¶ 9} Nationwide asserts that the Ohio Supreme Court has clearly spoken on the issue of bad faith claims. A claim for bad faith requires the insurer's refusal to settle a claim where there is either no lawful basis for such refusal coupled with actual knowledge of that fact or failure to determine whether there was any lawful basis for such refusal. Nationwide further asserts that: (1) the only conduct giving rise to appellants' bad faith claim is that which occurred prior to the date the complaint was filed because appellants did not seek to supplement their complaint pursuant to Civ.R. 15(E) for conduct occurring after the date of the complaint; (2) *Page 5 
four and half months delay (the date Nationwide had completed its internal review and the date the complaint was filed) in processing a claim does not constitute bad faith; and (3) appellants' complaint does not cite Nationwide's failure to pay med pay as a basis for their bad faith claim.
 {¶ 10} Appellate courts review decisions on summary judgment de novo, viewing the facts as most favorable to the non-moving party and resolving any doubt in favor of that party. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105; Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law and reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 11} In its judgment entry, the trial court relied upon the Ohio Supreme Court's decisions in Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272; Motorists Mut. Ins. Co. v. Said (1992),63 Ohio St.3d 690; and Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St. 3d 552, to stand for the proposition that absent an outright denial of coverage (without a reasonable basis) a bad faith claim cannot stand. We do not agree that Ohio law supports a rule of law that a bad faith claim can never exist absent an insurer's refusal to pay a claim. Accordingly, we do not agree with the trial court that Nationwide's conduct cannot constitute bad faith as a matter of law. *Page 6 
 {¶ 12} "When determining whether an insurer has breached its duty to its insured to act in good faith, the courts must utilize the `reasonable justification' standard." Calich v. Allstate Ins. Co., 9th Dist. No. 21500, 2004-Ohio-1619, at ¶ 4, citing Zoppo,71 Ohio St.3d at 554. "`An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'" Zoppo, 71 Ohio St.3d. at 554-555, quoting Staff Builders,Inc. v. Armstrong (1988), 37 Ohio St.3d 298, 303. This Court has further held that "[i]t is well settled that `based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured [and] [a] breach of this duty will give rise to a cause of action in tort against the insurer.'" Foster v. State Auto Ins. Co. (Apr. 29, 1998), 9th Dist. No. 18592, at *6, quoting Hoskins, 6 Ohio St.3d 272, at paragraph one of the syllabus.
 {¶ 13} We begin by disagreeing with Nationwide's assertion that only conduct prior to the filing of the complaint can be considered as evidence of bad faith because appellants did not seek to supplement their complaint based on Civ.R. 15(E). Appellants' complaint asserts that Nationwide did not timely process their claims and make an offer. The complaint also asserts that Nationwide sought medical records despite already having them in their possession. After the complaint was filed, appellants assert there was additional delay until their claims were paid in March of 2006, and additional requests for medical records *Page 7 
constituted additional evidence of bad faith. Because this conduct was the same (delay and multiple requests for medical records), there was no need to supplement their pleadings with additional instances of the same conduct and we can properly consider these later instances of conduct in determining whether Nationwide acted in bad faith.
 {¶ 14} Further, appellants were not required to supplement their complaint to include Nationwide's contingency offer at mediation as an additional instance of bad faith. Civ.R. 15(B) provides in part:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.
 {¶ 15} Appellants argued in response to Nationwide's motion for summary judgment, among other things, that Nationwide's conditioning of its offer at mediation on appellants' dismissal of their bad faith clams was evidence of bad faith. Nationwide did not object to that argument on the ground that it was not within the issues raised by appellants' complaint. If it had, appellants could have moved to amend their complaint. In the absence of such an objection, and in *Page 8 
accordance with the spirit of Civ.R. 15(B), appellants implicitly consented to the trial court's consideration of Nationwide's mediation offer in its analysis of Nationwide's entitlement to summary judgment.
 {¶ 16} Similarly, despite the fact that appellants' complaint does not base its bad faith claim specifically on Nationwide's refusal to pay med-pay benefits, the trial court could have properly considered the delay in paying med-pay benefits in its analysis of Nationwide's entitlement to summary judgment. Nationwide did not object to appellants' assertions in its response to Nationwide's motion for summary judgment, which argued that Nationwide's failure to pay med-pay benefits, among other things, created a genuine issue of material fact as to whether Nationwide acted in bad faith. In the absence of such an objection, and in accordance with the spirit of Civ.R. 15(B), Nationwide implicitly consented to the trial court's consideration of their failure to pay med-pay benefits in its analysis of Nationwide's entitlement to summary judgment.
 {¶ 17} There is a genuine issue of material fact that Nationwide's conduct constituted bad faith.
 {¶ 18} The tort of breach of a duty of good faith was recognized by the Ohio Supreme Court in Hoskins, supra:
 "[B]ased on the relationship between an insured and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action against the insurer.
 * * * *Page 9 
 "The liability of the insurer in such cases does not arise from its mere omission to perform a contract obligation, * * *. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties. This legal duty is the duty imposed upon the insurer to act in good faith and its bad faith refusal to settle a claim is a breach of that duty and imposes liability sounding in tort.
 "It must be stressed that * * *, the mere fact that an insurer refuses to settle within the policy limits is not, in itself, conclusive of the insurer's bad faith and does not give rise to tort liability. In order to recover for the excess liability, the insured has the burden to show that the refusal to settle was not made in good faith.
 "The concept of the lack of good faith was further elaborated upon by this court in Slater v. Motorist Mut. Ins. Co. (1962), 174 Ohio St. 148.] paragraph two of the syllabus, providing as follows:
 "`A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' See also, Moss v. Nationwide Mut. Ins. Co. (1985), 24 Ohio App.3d 145, 150." Hoskins at 276.
 {¶ 19} Applying these principles to the facts at hand there is a question of fact as to whether Nationwide acted with dishonest purpose, moral obliquity, conscious wrongdoing or fraudulent motive.
 {¶ 20} The following facts are undisputed:
 1. The collision occurred on October 17, 2002.
 2. Both the tortfeasor and appellants were insured by Nationwide.
 3. Nationwide received some of appellants' medical records in 2003 pursuant to the claim filed under the tortfeasor's policy. *Page 10 
 4. On September 13, 2004, appellants filed suit against the tortfeasor, which suit did not assert a claim against Nationwide for UM/UIM coverage or med-pay under the Mr. Zaychek's policy.
 5. Appellants settled their lawsuit with the tortfeasor, with the consent of Nationwide, for the tortfeasor's policy limit of $12,500 each.
 6. On April 22, 2005, appellants asserted UM/UIM claims against Nationwide under Mr. Zaychek's policy, which claim was assigned to a different adjuster (Mr. Deibel) than the adjuster that processed the claim under the tortfeasor's policy.
 7. In May of 2005, Mr. Deibel requested and received appellants' medical records.
 8. In the end of May, Mr. Deibel requested additional medical records, which were provided to him in mid June.
 9. In August of 2005, appellants wrote to Mr. Deibel requesting an offer.
 10. On September 1, 2005, appellants made settlement demands of $70,000 each to Nationwide.
 11. On October 19, 2005, appellants filed suit against Nationwide for breach of contract and bad faith.
 12. On November 21, 2005, Nationwide propounded discovery requests upon appellants seeking, among other things, medical records.
 13. On March 6, 2006, the dispute was submitted to mediation during which Nationwide offered to settle the matter contingent upon appellants dismissing their bad faith claims. Appellants declined to do so.
 14. On March 8, 2006, Nationwide offered to settle the UM/UIM claims for $22,500 each, which offer was accepted by appellants.
 15. On July 28, 2006, Nationwide paid appellants $1,000 each for med-pay. *Page 11 
 16. On August 8, 2006, Nationwide paid appellants an additional $1,000 each for med-pay.
 {¶ 21} In determining that there is a genuine issue of material fact as to whether Nationwide acted in bad faith, we specifically rely upon the following facts: (1) Mr. Deibel admitted that he did not timely process appellants' claims despite having all of the information he needed to do so in July of 2005; (2) Nationwide did not make appellants a settlement offer until March 8, 2006, almost one year after the date appellants made their claims; and (3) Nationwide did not fully and completely pay appellants' med-pay claims until August 8, 2006, despite being in possession of appellants' medical records since as early as January 2003, and despite having been provided additional copies of these records on several occasions. These facts and the fact that Nationwide's first and only offer had strings attached creates a question as to whether Nationwide was conscious of its wrongdoing and/or was acting with a dishonest purpose.
 {¶ 22} When construing these facts as most favorable to appellants and resolving any doubt in favor of appellants, reasonable minds could conclude that Nationwide acted in bad faith. Accordingly, Nationwide is not entitled to judgment as a matter of law.
 {¶ 23} Appellants' first and second assignments of error are sustained, and the decision of the trial court is reversed and this matter is remanded to the trial court for proceedings consistent with this opinion. *Page 12 
Judgment reversed and cause remanded
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
 DICKINSON, J. CONCURS *Page 13