[Cite as *Leonard v. State Farm Fire & Cas. Co*, 2025-Ohio-5089.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| JAMES LEONARD, | : | |
| | | CASE NOS. CA2024-07-091 |
| Appellant, | : | CA2024-09-113 |
| | : | |
| - vs - | | OPINION AND |
| | : | JUDGMENT ENTRY |
| | | 11/10/2025 |
| STATE FARM FIRE & CASUALTY CO., | : | |
| | | |
| Appellee. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 06 1145


Law Office of John H. Forg, and John H. Forg, III for appellant.

Gallagher, Gams, Tallan, Barnes & Littrell, LLP, and Lori E. Thomson, for appellee.


**O P I N I O N**

**BYRNE, J.**

{¶ 1}   James Leonard appeals from the decision of the Butler County Court of Common Pleas, General Division, which granted summary judgment in favor of State Farm Fire & Casualty Co. and dismissed Leonard's claims arising out an insurance claim.

For the reasons described below, we affirm.

## I. Factual and Procedural Background

## A. Storm Damage and Insurance Claim

{¶ 2}    Leonard owns a home located in Middletown, Ohio ("the residence"). State Farm Fire & Casualty Co. ("State Farm") provided homeowner's insurance for the home under a homeowner's policy ("the policy").

{¶ 3}    In June 2022, a severe windstorm damaged the residence's roof. Leonard later filed an insurance claim with State Farm. In October 2022, a State Farm adjustor inspected the roof and determined that coverage existed. The adjustor determined that the policy covered $4,989.12 in repairs, and a payable amount of $3,530.40.[1] State Farm's repair estimate included replacement of 22 damaged shingles and a four-foot by four-foot section of decking.

{¶ 4}    Leonard separately retained a roofing contractor, Weather Guard Roofing, Ltd. ("the roofing contractor"), to assess the storm damage and provide him with a repair estimate. The roofing contractor provided Leonard with an estimate totaling $50,760.95.

{¶ 5}    The significant difference between the two estimates was due to the roofing contractor's estimate including replacement of the entire roof. In the written estimate, the roofing contractor explained:

> We received the [State Farm] estimate for repairs for [the insured.]  After reviewing the approved scope, we sent a shingle sample out for proper identification to ensure the replacement shingles would be of like kind and quality, as well as compatible with what is currently on the roof. Once the shingle was removed, it was noticed that the roof has spaced decking. With the estimate provided by State Farm including replacing 4 square feet of decking, and replacing multiple shingles throughout the roof assembly, it would not be up to

---

1. The payable amount constituted the covered damages, less accrued depreciation and the policy's $1,000 deductible.

code to install new shingles over the spaced decking. Our estimate includes laying over new OSB to bring the decking surface up to code and replacing all the shingles. Once we received the paperwork back in regards to the identification of the shingle, it was determined that there is no shingle on the market currently that is compatible with the shingles on the roof. This is yet another reason why a repair can not be completed, and a total roof replacement is needed.

{¶ 6} Thus, the roofing contractor's opinion that total roof replacement was necessary was not based on the roofing contractor disagreeing with the State Farm adjustor as to the extent of damage caused by the windstorm, but rather due to the roofing contractor's determination that matching shingles were unavailable, as well as the roofing contractor's discovery that the currently installed decking had gaps between the decking sheets, which would not, according to the roofing contractor, conform to applicable building codes.

## B. Demand for Appraisal

{¶ 7} Leonard sent the roofing contractor's estimate to State Farm, but received no response. In April 2023, Leonard sent an "appraisal demand letter" to State Farm stating that he was invoking the policy's appraisal clause.

{¶ 8} In May 2023, State Farm responded to the appraisal demand letter in a written correspondence. In the correspondence, State Farm directed Leonard to the appraisal provision language in the policy and included an excerpt of that language in the correspondence. In brief, the appraisal provision language ("the appraisal clause"), as set forth in State Farm's correspondence, provided that if the insured and State Farm failed to agree on the "amount of loss," relative to an insurance claim, that either party could demand that the "amount of loss" be determined through the appraisal process.

{¶ 9} The appraisal clause provides, in summary, that each party would select an appraiser and the appraisers would attempt to jointly determine the amount of loss. If the

appraisers agreed, the amount of the loss would be binding on the insured and State Farm. If the appraisers failed to agree, an umpire would be selected to resolve any differences.

{¶ 10} The appraisal clause also set out the following concerning the scope of the appraisal:

> h. Appraisal is only available to determine the amount of the loss of each item in dispute. The appraisers and the umpire have no authority to decide:
>
> (1) any other questions of fact;
> (2) questions of law;
> (3) questions of coverage;
> (4) other contractual issues; or
> (5) to conduct appraisal on a class-wide basis.

{¶ 11} Based on these exclusions, State Farm asserted that the appraisal process did not include questions concerning law or policy coverage and was only available to determine the "amount of loss." State Farm asserted that this was not a case where the parties disagreed on the amount of loss, but rather, the parties disagreed upon the scope of repairs that would be covered under the policy, which could not be determined through the appraisal process.

## C. Complaint

{¶ 12} Dissatisfied with State Farm's response, in June 2023, Leonard filed a complaint against State Farm in the Butler County Court of Common Pleas. The complaint asserted three causes of action.

{¶ 13} In Count One, titled "Appraisal," Leonard recited the appraisal clause language in State Farm's letter and asserted that by denying Leonard's request for appraisal, State Farm had breached the policy and Leonard had suffered resulting damages. Leonard also attached to his complaint, as an exhibit, the State Farm rejection

letter containing the appraisal clause.

{¶ 14} In Count Two, titled "Breach of Contract," Leonard asserted that State Farm had breached the terms of the policy by its failure to "pay for the damages to the Residence caused by the severe storm . . ."

{¶ 15} In Count Three, titled "Good Faith and Fair Dealing," Leonard asserted that State Farm had violated a duty to deal with Leonard fairly and in good faith with respect to the claims presented to it under the policy. Among other claims, Leonard asserted that State Farm had acted "arbitrarily, capriciously and/or maliciously in refusing to settle the Homeowner's Claim under circumstances that did not furnish a reasonable justification for that refusal . . ."

{¶ 16} In his requests for relief, Leonard demanded that the court order the parties to engage in the appraisal process. Leonard also requested compensatory damages, punitive damages, and attorney fees.

**D. Motion to Compel Appraisal**

{¶ 17} Shortly after filing the complaint, Leonard moved the trial court to order an appraisal. Leonard argued that the "amount of loss" was in dispute and that he was entitled to an appraisal under the policy based on this dispute.

{¶ 18} State Farm opposed the motion, arguing that "amount of loss" was not in dispute and that instead, the disagreement centered on whether the policy provided coverage for a full roof replacement, including the undamaged portions of the roof. State Farm argued that while it disagreed that full roof replacement was covered under the policy, Leonard's argument was over questions of coverage and questions of law, and thus outside the scope of the appraisal process.

{¶ 19} The trial court denied Leonard's motion to compel an appraisal. Noting the appraisal clause language, the court found that Leonard had not established that either the extent or cause of damages was in dispute. Instead, the court described the issue in dispute as:

> Whether the insurance policy provides coverage when one part of a roof is damaged but the undamaged portion must also be replaced because the replacement shingles in the damaged area do not match those in the undamaged area. The controversy is over replacement of sections of the roof that were not damaged by the storm – and may not be even damaged at all.

{¶ 20} The court went on to find that whether State Farm was required to replace the entire roof, either under the policy terms or in order to comply with Ohio law, was a question of law and coverage, and that both of these questions were specifically excluded from the authority of appraisers under the policy language.

{¶ 21} The court concluded by stating that while the court was denying Leonard's motion, he could still be entitled to an appraisal "once the contractual obligations of the parties are known." Thus, the court indicated it was not dismissing Count One, but that it was premature to order the parties to conduct appraisal at that point in the litigation.

### E. Motions for Summary Judgment

{¶ 22} Leonard subsequently moved for summary judgment on Count Two (breach of contract). In relevant part, Leonard argued that the Residential Code of Ohio ("the RCO") required that any repairs to his roof be compliant with current code requirements and that the partial repair offered by State Farm would be illegal under the RCO.[2]

---

2. Leonard's claims concerning why the RCO required a full roof repair would require an extensive discussion to summarize. This issue has been fully briefed by the parties at the trial court level and in this appeal, with State Farm arguing that full roof replacement is not required under the RCO for various reasons. Since the issue of whether the RCO required a full roof replacement is ultimately not important in determining this appeal, we will not reiterate those arguments in this opinion.

Furthermore, Leonard argued that he possessed coverage for code compliance costs up to $42,130 under a provision in the policy titled "Option OL." Leonard referred to an affidavit filed earlier in the proceedings (in support of his reply in support of his motion to compel appraisal) that had, as an attached exhibit, a renewal declarations page listing "Option OL" and an excerpt from the policy that referred to "Option OL."

{¶ 23} State Farm separately moved for summary judgment on Count Two (breach of contract) and Count Three (bad faith). State Farm argued that the RCO did not require a full roof replacement, and instead, the repairs to only the damaged portions of the roof were code compliant. State Farm asked the court to issue a declaration in this regard. As to the bad faith claim, State Farm argued that it had a reasonable justification for its position with respect to Leonard's demands and therefore Leonard could not establish bad faith.

**F. Summary Judgment Decision**

{¶ 24} The court issued a decision addressing both summary judgment motions. Initially, the court noted it had reviewed the entire record and found that the policy document had never been filed with the court. Leonard had not attached the policy document to his complaint and had never filed a copy of the policy with any filings, including any of the summary judgment filings.

{¶ 25} The court noted that Leonard acknowledged the fact that the policy had not been filed with the court in his summary judgment motion when he referenced what he claimed to be a specific policy provision and footnoted that State Farm had produced a copy of the policy to him during discovery. The court commented, "It is unclear why Leonard chose to not place the document into the record after apparently realizing it had not yet been filed."

{¶ 26} Ultimately, the court found that without the policy before it, it would be unable to determine whether State Farm had breached the policy. Likewise, without the policy, the court could make no determination that State Farm had acted in bad faith with respect to its handling of the insurance claim. Accordingly, the court granted summary judgment on Count Two (breach of contract) and Count Three (bad faith) in favor of State Farm. The court declined State Farm's request to issue a declaration that the RCO did not require a full roof replacement, also based on the lack of the policy document.

{¶ 27} The court noted that neither party had moved for summary judgment on Leonard's claim in Count One (appraisal) and that claim remained pending for trial.

{¶ 28} The court later scheduled a pretrial conference on the appraisal claim. Neither party appeared for the pretrial. The court then dismissed the appraisal claim.

{¶ 29} Leonard appealed, raising four assignments of error.

## II. Law and Analysis

### A. Motion to Compel Appraisal

{¶ 30} Leonard's first assignment of error states:

THE TRIAL COURT ERRED IN DENYING LEONARD'S MOTION TO COMPEL APPRAISAL.

{¶ 31} Leonard argues that the trial court erred in denying his motion to compel an appraisal. Leonard argues that the court incorrectly characterized the issue to be decided under the appraisal clause as an issue of insurance coverage.

### 1. Standard of Review

{¶ 32} The trial court's decision to deny Leonard's motion to compel was premised on the court's interpretation of the contractual language of the appraisal clause. We review issues of contract interpretation de novo. *Nichols v. Croplands, L.L.C.*, 2025-Ohio-128, ¶ 15 (12th Dist.).

## 2. Analysis

{¶ 33} As set forth previously, State Farm's letter denying Leonard's demand for an appraisal cited the appraisal clause. The appraisal clause permits either party to demand an appraisal to determine the "amount of loss" and sets forth the procedure to determine the "amount of loss." However, the appraisal clause limits the scope of what may be determined by the appraisal and specifically excludes questions of coverage and questions of law.

{¶ 34} Leonard argues that the phrase "amount of loss" is ambiguous and that he is entitled to the benefit of any ambiguity in how the phrase should be interpreted. He argues that the trial court should have interpreted "amount of loss" to include "whether the repair of the damaged roofing must comply with the Residential Code of Ohio, a factual determination of the scope of damages." In other words, Leonard is arguing that "amount of loss" includes a factual determination as to whether Leonard's claims about compliance with the RCO required State Farm to pay for a full roof replacement.

{¶ 35} "Amount of loss" is not defined in the appraisal clause language cited in State Farm's letter. And Leonard failed to submit an authenticated copy of the policy at any time during the proceedings. The policy may have defined "loss," or "amount of loss," or might have included some other policy provision that would have shed light on the definition of "amount of loss." Leonard's claim that he should be entitled to have any ambiguity in the phrase "amount of loss" interpreted in his favor is not convincing when Leonard himself is potentially responsible for the lack of clarity as to this term.

{¶ 36} Regardless, in an attempt to define "amount of loss" in the absence of the policy document, Leonard cites an Ohio Supreme Court case for the proposition that the purpose of an appraisal is to determine the "extent" of an insured's loss. *Saba v.*

*Homelands Ins. Co. of Am.*, 159 Ohio St. 237, 240-241 (1953). Leonard argues that in *Saba*, there was a dispute about the "extent" of damages caused by the windstorm, and appraisal was the proper mechanism for deciding this issue.

{¶ 37} *Saba* does not support Leonard's argument. In *Saba*, an insurer argued that an appraisal clause was binding on the insured, but not on the insurer. *Id*. at 239. And the insurer argued that it could demand an appraisal, but an insured could not. *See id.* at 240. In rejecting this argument, the court cited 45 C.J.S., Insurance § 1110, at 1353 which stated the purpose of an appraisal clause:

> 'Their purpose is to provide a plain, speedy, inexpensive and just determination of the extent of the loss, and insured has the right to have the amount of the loss settled as provided in the arbitration clause of his policy even though insurer denies liability or refuses to participate in the arbitration. The clause does not require the parties to do anything but appoint their appraisers, notify them, and hand them the policy.'

{¶ 38} The court's citation to C.J.S. was only to support its holding that appraisal clauses are binding on both insureds and insurers. *Saba* did not involve an interpretation of the phrase "amount of loss."

{¶ 39} Based on the word "extent" in *Saba*, Leonard argues that there was a dispute of fact about the "extent" of loss caused by the windstorm. In effect, he is arguing that the windstorm caused greater damage than found by State Farm's adjustor. The record does not support this claim.

{¶ 40} Neither party disputed that Leonard's roof was damaged by the windstorm in June 2022. It is also undisputed that the windstorm only damaged part of the roof. Leonard presented no evidence, either by way of affidavit, or otherwise, indicating that State Farm's assessment of the actual damaged portions of the roof were inaccurate. (Leonard admitted, in an affidavit, that State Farm's estimate would repair the damaged

portion of the roof.)[3] There is also no dispute over the roofing contractor's estimate for replacing the entire roof. Nor is there any dispute as to the accuracy of State Farm's estimate for repairs to the damaged portion of the roof.

{¶ 41} There are only two disputes identified by Leonard in this case. One is whether the RCO required a full roof replacement under the policy. The second is whether the policy itself, and the "Option OL" coverage, provided coverage for a full roof replacement. But these are all questions that require examination of the applicable RCO provisions and examination of the contractual language of the policy. These are questions of law and questions of policy coverage, not factual issues. [4]

{¶ 42} More specifically, it is a question of law whether the RCO standards for new construction or those for existing construction apply to the repairs to Leonard's roof. And, whether the policy, or the "Option OL" coverage, required State Farm to approve repairs in accordance with the RCO is a question of coverage to be determined by the contractual language of the policy.[5]

{¶ 43} Under the plain language of the appraisal clause, issues of law and coverage are specifically excluded from the purview of an appraisal. Accordingly, the court did not err in denying Leonard's motion for an appraisal based upon its conclusion that

---

3. Leonard's second affidavit, ¶ 3, attached to his reply in support of motion to compel appraisal.

4. Leonard also cites *Westview Village v. State Farm Fire & Cas. Co.*, 2022 WL 3584263 (N.D. Ohio Aug. 22, 2022) for the proposition that "amount of loss" includes "causation." In *Westview*, the parties disputed whether total roof replacement was necessary due to wind damage or normal wear and tear. *Id.* at *1. However, as set forth above, Leonard is seeking full roof replacement for reasons other than a dispute over wind damage (causation).

5. Leonard referred to "Option OL" extensively in both his briefing before the trial court and on appeal. However, we note that the summary judgment record included no competent evidence of what Option OL provided. The renewal declaration page attached to Leonard's reply memorandum in support of his summary judgment motion confirms that the policy included Option OL but provides no details as to what was covered by the option. Leonard quoted text from Option OL in his memorandum opposing State Farm's motion for summary judgment, but this quoted text is not competent summary judgment evidence without the policy in the record.

these disputed issues of law and coverage could not be decided through appraisal.

{¶ 44} We overrule Leonard's first assignment of error.

**B. Compliance with RCO**

{¶ 45} Leonard's second assignment of error states:

THE TRIAL COURT ERRED IN DENYING LEONARD'S MOTION THAT STATE FARM'S DETERMINATION OF THE "AMOUNT OF LOSS" FAILED TO INCLUDE MANDATORY COMPLIANCE WITH THE RESIDENTIAL CODE OF OHIO.

{¶ 46} Leonard argues that the trial court erred in finding that the "amount of loss" phrase in the appraisal clause does not include "mandatory compliance" with the RCO. Leonard does not identify where in the record the trial court made this decision. Presumably Leonard is referring to the trial court's decision to deny his motion to compel appraisal.

{¶ 47} The trial court, in denying Leonard's motion to compel appraisal, did not hold that compliance with the RCO was not included in "amount of loss." Instead, the court determined that the issue of whether the RCO required a full roof replacement in conjunction with the policy was a question of law and coverage, which was precluded by the explicit language of the appraisal clause.

{¶ 48} In response to the first assignment of error, we have already determined that the trial court correctly determined that the applicability of the RCO to his insurance claim would have to be decided as a matter of Ohio law and the policy terms. Accordingly, the trial court did not err in this regard and we overrule Leonard's second assignment of error.

**C. Breach of Contract**

{¶ 49} Leonard's third assignment of error states:

THE TRIAL COURT ERRED IN DENYING LEONARD'S MOTION FOR SUMMARY JUDGMENT FOR BREACH OF CONTRACT (COUNT TWO).

{¶ 50} Leonard argues that the trial court erred in denying his motion for summary judgment on Count Two (breach of contract). Leonard premises this argument on the same arguments he has previously set forth in his first two assignments of error. That is, Leonard argues that State Farm breached the contract by not allowing an appraisal to determine "amount of loss" based on his argument that RCO required a full roof replacement and that "[a]ny lesser repairs would place the Residence in violation of the Residential Code of Ohio."

**1. Summary Judgment Standard and Standard of Review**

{¶ 51} "Summary judgment is appropriate under Civ.R. 56 when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in its favor." *Certain Interested Underwriters at Lloyd's, London, England v. Total Quality Logistics, L.L.C.*, 2023-Ohio-4470, ¶ 14 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389.

{¶ 52} "The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact." *Certain Interested*

- 13 -

*Underwriters at Lloyd's* at ¶ 15, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107. "Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party 'must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings.'" *Id.*, citing *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.); Civ.R. 56(E).

{¶ 53} This court reviews a trial court's summary judgment decision under a de novo standard. *Id.* at ¶ 16, citing *Sexton* at ¶ 7.

## 2. Analysis

{¶ 54} In this assignment of error, Leonard discusses, at length, his argument that the RCO required a full roof replacement. However, we have already determined that the issue of whether the RCO required full roof replacement, or whether the policy provided coverage for a full roof replacement, was a matter of law and coverage that could not be determined through the appraisal process. As a result, Leonard's argument that State Farm breached the policy by not allowing appraisal to determine this issue is meritless as a matter of law. In addition, Leonard failed to provide the policy at any point in the proceedings below. We overrule Leonard's third assignment of error.

## D. Bad Faith Claim

{¶ 55} Leonard's fourth assignment of error states:

> THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT IN FAVOR OF STATE FARM IN HOLDING THAT IT ACTED "REASONABLY" BY FAILING TO COMPLY WITH THE HOMEOWNER'S POLICY AND CONTROLLING LAW.

{¶ 56} In his fourth assignment of error, Leonard argues that the trial court erred in declining to grant him summary judgment on Count Three, which alleged that State Farm

acted in bad faith by failing to cooperate with his request for an appraisal.

{¶ 57} "In Ohio, an insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the policy of insurance, including in handling and paying an insured's claim." *Crane Serv. & Inspections, L.L.C. v. Cincinnati Specialty Underwriters Ins. Co.*, 2018-Ohio-3622, ¶ 24 (12th Dist.) The standard for determining lack of good faith is "reasonable justification." *Daniels v. Citizens Ins. Co. of Ohio*, 2005-Ohio-6166, ¶ 8 (12th Dist.). As such "'[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'" *Id.*, quoting *Zoppo v. Homestead Ins. Co.*, 1994-Ohio-461, paragraph one of syllabus. An insurer lacks reasonable justification for denying a claim when its refusal to pay is predicated on an arbitrary or capricious belief that the insured is not entitled to coverage. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 277 (1983).

{¶ 58} To support his claim that State Farm lacked reasonable justification for its handling of the claim, Leonard reiterates the arguments he made in his first three assignments of error. But as we have discussed, the determination of whether the RCO required a full roof replacement and whether State Farm was required under the policy to provide a full roof replacement were matters of law and coverage that could not be determined under appraisal. Therefore, State Farm acted with reasonable justification in declining to engage with Leonard in the appraisal process. We overrule Leonard's fourth assignment of error.

{¶ 59} Judgment affirmed.

HENDRICKSON , P.J., and M. POWELL, J., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.


/s/ Robert A. Hendrickson, Presiding Judge


/s/ Mike Powell, Judge


/s/ Matthew R. Byrne, Judge